1817.

LIVINGSTON
v.
HUBBS.

*LIVINGSTON *against* HUBBS and others.                    [ * 512 ]

Where *B.* obtained from *L.* a deed for land, through fraud, in which *H.* was concerned, and *B.* afterwards confessed a judgment to *H.*, who assigned it to *R.* for a valuable consideration, and without notice of the fraud, it was held, that the deed to *B.* being null on account of the fraud, the judgment created no valid *lien* on the land; that *R.* took the assignment at his peril, and subject to all the existing rights of the debtor; and the land was decreed to be reconveyed, discharged from the judgment, and a perpetual injunction awarded.

THE bill charged, that *Daniel Baldwin*, in his lifetime, procured a deed from the plaintiff, of a house and lot, in *Brooklyn*, by fraudulent representations and practices; and that the defendant *Hubbs* was concerned with *Baldwin* in the fraud; and that, immediately after the deed was so procured, *Baldwin* confessed a judgment to *Hubbs* for 839 dollars, which *Hubbs*, shortly thereafter, assigned to the defendant *Robbins*, and, as the bill charged, with knowledge of the fraud.

*July* 8th.

After the answers of the defendants, the cause was put at issue, and proof taken, and the cause set down for hearing.

*Baldwin*, and *Sampson*, for the plaintiff.

*Brackett*, *Tucker*, and *Burr*, for the defendants.

THE CHANCELLOR. The allegation of fraud is abundantly established; and the only point admitting of any real discussion is, how far *Robbins*, who appeared to be a purchaser of the judgment for a valuable consideration, and to whom no charge of fraud could be imputed, was to be protected in his *lien* on the land. *Robbins* purchased the judgment subject

395

to all the equity of the plaintiff against it, while it existed in the hands of *Hubbs;* and as the title of *Baldwin* was infected with gross fraud, it was \*null from the beginning. The fraudulent judgment, therefore, created no valid subsisting *lien.* The title to the land never passed from the plaintiff; and there is no rule of law, or equity, to protect the judgment in the hands of *Robbins,* though he may be an assignee for a valuable consideration, without notice of the fraud, for he took the assignment of the judgment at his peril. He took it subject to all the existing rights of the *debtor;* and these rights could not be varied, or affected, by the assignment, though, perhaps, the right of *a third person,* depending upon a secret trust, might be affected. (*Murray & Winter* v. *Lylburn* and others.)† The judgment was not an article of ordinary commerce, and it would be repugnant to justice and sound policy, to permit fraud to be successful by such a contrivance.

The land, therefore, must be decreed to be reconveyed to the plaintiff, discharged of the judgment, and a perpetual injunction awarded against the execution of the judgment upon that land.

                                    Decree accordingly.