### G. FLOYD *against* M. JAYNE and others.

Where, after a verdict in a Court of Common Pleas, the inferior Court, under the statute, has no power to grant a new trial, this Court will grant relief, on the ground of newly discovered evidence, unless the sum in controversy be too small to bear the expense of the remedy. But if the party has not used due diligence, or all the means in his power to establish, at the trial, the fact which he seeks to prove on a new trial, this Court will not interfere.

The jurisdiction of this Court over trials of law, by compelling the party who has gained a verdict to submit to a new trial, or be for ever enjoined from proceeding on his verdict, is now very rarely exercised, and never, except in a very clear case of fraud or injustice, or upon newly discovered evidence, which could not possibly have been produced at the first trial.

THE bill, filed *November*, 1821, stated, that a judg- *December 26.* ment had been lately recovered in the Court of Common Pleas, of *Suffolk* county, against the plaintiff, in the names of *S. S. Hawkins, R. Hawkins,* and *E. Smith,* executors of *Benjamin Hawkins,* deceased, defendants, on a sealed note, dated *June* 7th, 1806, made by the plaintiff, in favour of *B. H.,* the testator, for fifty dollars, being the price of a yoke of oxen, purchased by the plaintiff of *B. H.* That the defendant, *Morris Jayne,* being an intimate friend of the plaintiff, informed him, that *B. H.* owed *M. J.* for goods sold to him, and that *M. J.* was afraid of losing his money, and being informed that *B. H.* held the plaintiff's note, he wished to obtain payment of his debt, through the plaintiff, and stated, that if the plaintiff would pay *M. J.* the amount of the note, and interest, *M. J.* would prevail on *B. H.* to allow the amount, or so much thereof as might be necessary, to be carried to the credit of *B. H.,* in discharge of his debt, and to give up the plaintiff's note to be cancelled, and promised that he would cancel it. That

the plaintiff, confiding in the integrity of *M. J.*, agreed to his proposal, and paid him the amount of the note, on the terms and conditions so proposed ; but took no receipt, nor was any person present at the time ; that *H.*, being made acquainted with the transaction by *M. J.*, assented to it, and gave up the note to *M. J.*, who has never cancelled, or given it up to the plaintiff, but still retains it. That *B. H.* died in 1817. That in *April*, 1821, a suit was commenced, at the instance of the defendant, *M. J.*, who claims to be an assignee, or of the defendant, *S. J.*, or both of them, in the names of the executors of *B. H.*, but for the benefit of *M. J.*, in the Common Pleas of *Suffolk* county, against the plaintiff, on the note so given by him to *B. H.* That the plaintiff pleaded the general issue, but having no evidence to prove the payment of the note, was obliged to submit to a verdict ; and an inquest was accordingly taken, by default, against him, for 103 dollars and 6 cents, on which a judgment was entered for 136 dollars and 52 cents, including the costs. That since the verdict and judgment, the plaintiff had discovered proof of the circumstances above stated ; and that one *R. T.* had informed the plaintiff, that she heard *M. J.*, some years since, acknowledge the payment ; but that, as none of the Judges of the Court of Common Pleas of *Suffolk* county were of the degree of a counsellor of law of the Supreme Court, a new trial could not, according to the statute, be had in that Court. That the plaintiff had applied to the defendants, and requested them to consent to a new trial, informing them of such newly discovered evidence, and offered to give them security for the payment of the money, in case a new trial should result in their favour. *Prayer*, for an injunction, and general relief. An injunction was granted, on paying the amount of the verdict into the Court.

The defendants appeared and answered. The answer of *M. J.* stated, that on the 22d of *April*, 1807, *B. H.*, being

indebted to him in the sum of 25 dollars, gave him the note in question in payment, and he paid the balance of 28 dollars and 6 cents in cash to *B. H.*, who delivered the note, without writing, to him. That the plaintiff never paid him or *B. H.* the amount of the note, and that it was still unpaid; and he denied the allegations in the bill on the subject. He admitted that the note was transferred to him, without any endorsement or writing, and was in his possession. That there were unsettled accounts between him and the plaintiff, which were not adjusted until in the spring of 1820, when he applied to the plaintiff for payment, which he refused. That this defendant then applied to the executors of *B. H.* for power to bring a suit, in their names, against the plaintiff, on the note; and that, expecting to be absent, he requested the power to be given to his brother, *J. J.*, so that he might collect the money for him, which was accordingly done. He admitted the facts as to the verdict and judgment, and that the Court of *C. P.* had no power to grant a new trial; and denied that he ever told *R. T.*, the person mentioned in the bill, that the plaintiff had paid the note.

Proofs were taken in the cause. Two of the witnesses for the plaintiff testified expressly to the acknowledgment of *M. J.*, that the plaintiff had paid the note, and two other witnesses deposed to the same effect. The substance of their testimony is stated in the opinion of the Court.

The Chancellor. This is a bill for a new trial, after a verdict in the *Suffolk* Common Pleas, upon a sealed note, amounting, in principal and interest, to 103 dollars 61 cents. The ground of the application is the discovery, since the verdict, of testimony to prove the payment of the note, and the want of power in that Court to grant a new trial, otherwise than for irregularity, as none of the Judges are of the degree of counsellor in the Supreme Court.

Anciently, Courts of equity exercised a familiar juris-

diction over trials at law, and compelled the successful party to submit to a new trial, or to be perpetually enjoined from proceeding on his verdict. This relief was not granted, unless the application was founded upon some clear case of fraud or injustice, or upon newly discovered evidence, which could not possibly have been made use of upon the first trial. But this practice has long since gone out of use, and such a jurisdiction is rarely exercised in modern times, because Courts of law are now in the competent and liberal exercise of the power of granting new trials. (1 *Vern.* 177. note 1. *Richards*, B., in 3 *Price,* 247. 1 *Johns. Ch. Rep.* 97. 323.) The present case, however, seems to form an exception to the modern rule, and to require of this Court the exercise of that ancient jurisdiction, because, here is a case in which the Court of law has no power to award a new trial upon the merits. If the particular circumstances stated in the pleadings and proofs, rendered the exercise of the power proper by a Court of law possessing jurisdiction for that purpose, I should feel myself called upon to grant relief to the plaintiff, unless it should appear that the sum in controversy was too small to bear the expense of the remedy.

But on examining the testimony taken in chief, I think it is pretty evident that the plaintiff did not use the requisite diligence, or the means in his power, to establish, on the trial at law, the payment which he now sets up as his defence; and for that reason, he is not entitled to the interposition of this Court, on the ground of the newly discovered testimony. It is the settled doctrine and practice of this Court, as well as of Courts of law, that a party is not entitled to relief after verdict, upon testimony which, with ordinary care and diligence, he might have procured and used upon the trial at law. It would be establishing a grievous precedent, and one of great public inconvenience, to interfere in any other case than one of indispensable necessity, and wholly free from any kind of negligence;

especially, when the matter in controversy was of small amount, and not well able to bear the expense of a litigation in this Court.

The plaintiff did not plead payment, nor entitle himself to prove it, against the demand upon the specialty. It could not have been given in evidence upon the general issue, without a special notice subjoined to the plea. Here was a great and fatal want of diligence on the part of the plaintiff, in not putting himself in a *capacity* to give payment in evidence upon the trial; and it appears, by the testimony of *Jedediah Hart*, a material witness for him, that he informed the plaintiff, before the trial, that he could be of some service to him, as a witness at the trial, but the plaintiff made no reply, and told him, afterwards, " that as there was no third person present,-when he had given the money to *Jayne*, to take up the note, he did not suppose that deponent could know any thing material on the subject, and that therefore he had not called him to be a witness on the trial." It is now very clear, that had the plaintiff pleaded payment, and availed himself of the information which *Hart* had it in his power to give, and produced *Hart* as a witness, he would have supported his plea of payment. So, again, it appears that *John Jayne*, another material witness for the plaintiff, was, at the time, known to him to be such, for the witness says he was present when the defendant, *M. J.*, confessed to the plaintiff that the note was paid and destroyed. The plaintiff should have recollected that this witness was present. Due inquiry would probably have brought that fact to his memory, but it does not appear that he made any inquiry. Another material witness for the plaintiff is *Charles A. Floyd*, his attorney in the suit below, who, of course, knew, before he was employed to defend the suit, and put in a plea, the existence of the acts and confessions of the defendant, *M. J.*, in respect to the note, which are now mentioned by him as evidence of payment. This appears

1822.

FLOYD
v.
JAYNE.

to me, upon the whole, to be a very strong case of negligence, before the trial; and there is no account of any effort or inquiry whatsoever, made by the plaintiff pending the suit at law, to enable him to set up and support a plea of payment.

I cannot, then, interfere in this case, according to my view of the principles of the Court, or my sense of sound discretion. The bill must, accordingly, be dismissed, without costs, as against the defendant, *M. J.*, and with costs as against the other defendants, so far only as relates to their appearance and answers; and they are not to be allowed for any of the subsequent costs which were exclusively created between the plaintiff and *M. J.*

Decree accordingly.