AUGUSTINE ANNE LOUISE DENISE, HYACINTH ADDA MAYNEAUD DE PAUCEMONT, COUNTESS DE TOURNON, SERAPHINE CARPENTIER, WIDOW OF OLIVIER LOUIS MARTIN, CHARLES ALEXANDER MARTIN, JANE MARARIE SERAPHINA MARTIN, AND JAQUES FRANCOIS, JUSTINIAN FRANCOIS, AND ANTIONE JOSEPH SERVAIS, PLAINTIFFS IN ERROR, *v.* BENJAMIN RUGGLES.

Where a grant issued in 1722, by the French authorities of Louisiana, cannot be located by metes and bounds, it cannot serve as a title in an action of ejectment; and it was proper for the Circuit Court to instruct the jury to this effect.

THIS case was brought up by writ of error, from the Circuit Court of the United States for the District of Missouri.

The case depended on the construction of an old French grant, which is stated in the opinion of the court. It would not be possible to explain the nature of the dispute to the reader, without the introduction of maps; and as the decision in this case cannot possibly serve to illustrate any that may hereafter occur, it is not deemed expedient to increase the size of this volume by their introduction, or the arguments of counsel to show that the grant could or could not be located.

It was argued by *Mr. Garland* and *Mr. Johnson* for the plaintiffs in error, and by *Mr. Bibb* and *Mr. Cushing*, (Attorney-General,) for the defendant in error.

Mr. Justice CATRON delivered the opinion of the court.

This suit was brought in 1844, in the Circuit Court for the Missouri District, to recover sections nine and ten, and the half of sections numbers fifteen and sixteen, adjoining to nine and ten, in township thirty-eight north, range two east of the principal meridian; making 1920 acres, of which it is alleged the defendant Ruggles was in possession. The cause was tried before a jury in 1851, and a verdict rendered for the defendant.

The object of the suit is to establish a claim of Renault's heirs to a tract of land containing upwards of fifty thousand acres. The claim depends on a grant, a translation of which, from the French, was given in evidence in the Circuit Court, and is as follows:

"In the year one thousand seven hundred and twenty-three, and on the fourteenth of June, granted to Mr. Renault, in freehold, for the purpose of forming his establishment on the mines.

"One league and a half of ground fronting on the Little-Maramecq on the River Maramecq, at the place of the first arm, (branch, or fork) which leads to the collection of cabins called the Cabanage de la Renaudiere, by six leagues (eighteen miles) in depth; the river forming the middle of the point of compass, and the streamlet being perpendicular, as far as where Mr. Renault has his furnace; and thence straight to the place called the Great Mine."

A copy of the original, in French, being in the record also, it is here insisted for the plaintiffs, that the foregoing translation is erroneous and does not truly describe the boundaries of the land granted; that it should be one and a half leagues fronting on the Little Maramecq in the River Maramecq, at the place of the first branch which leads to the collection of cabins, called the Cabanage de la Renaudiere, by six leagues in depth, "the

river forming the middle of the Rhumb line, and the lead stream, as far as where Mr. Renault has his furnace, and thence a direct line to the spot named the " Great Mine."

The fork of Little Maramecq called for, and the old furnace on it, were proved to exist on the trial, by Mr. Cozzens, who was sent to survey the grant, by order of court, at the instance of the plaintiffs. He says, the Grand Mine is marked on the map; that is, on a copy of the map of public surveys of the United States, obtained from the land office at St. Louis. He furnished no plot, because, as he reported and deposed, he could not make a survey of the land claimed; the description in the grant being too vague and unmeaning for him to lay down the land corresponding to the objects called for on the ground. He further deposed, that he understood the French, and was governed by both the English and French copies. On the question whether the tract of land claimed could be ascertained, and the true boundaries identified by survey, the jury was instructed as follows :

" The court is of opinion that the grant to Renault, unaided by a survey under the French or Spanish government, did not separate the land from the public domain : That it cannot now, from its uncertainty, be located; it is not therefore a grant for any specific lands, and does not entitle the plaintiffs to the *locus in quo.*"

Thus the Circuit Court held, that notwithstanding the Little Maramecq River, the lead stream, the smelting furnace, and the Grand Mine, existed as indicated on the public surveys, and as claimed to exist by the plaintiffs, still the grant was void for uncertainty, and the impossibility of locating the same.

As the first instruction took the case from the jury, and put an end to the suit on legal grounds, we will proceed to examine this instruction.

The land is to front on the river. When the point of beginning is established on the river, then it is to be meandered up or down, until a straight line will reach a league and a half from the first to the second corner.

It is insisted that the mouth of the streamlet is to be the place of beginning, and that the first line is to run up the river ; and that the north-western side line is to meander the streamlet to the old furnace, called for in the grant.

Why the beginning point should be at the mouth of the lead stream, it is difficult to comprehend. The grant was intended to cover Renault's mining establishment; but if surveyed, as contended for, the second line would run through the centre of his smelting furnace, and also through the centre of the mine where the ore was obtained. By such construction the main

object of the grant, when it was made, would have been defeated. We suppose the following would be a more plausible construction : Take the streamlet, from its mouth to the furnace, to be the perpendicular of the front line on the river; then draw a straight line from its mouth to the furnace to give the course of the side lines; they being drawn parallel on each side of the foregoing middle line and a league and a half apart. By such survey the smelting furnace would have been included. But where these side lines were to begin or end, (treating each as a unit,) no one could tell; nor was it possible to reach the Grand Mine, or include it, by this mode of survey, and therefore this construction could not be relied on.

The jury was bound to find the lines of the grant from its calls, and the objects proved to exist on the ground corresponding to the calls. Nor could this be done by conjecture; lines and corners must be established by the finding, so as to close the survey.

If, after admitting all the verbal evidence to be true, as to objects on the ground, to the extent insisted on for the plaintiffs, and disregarding the defendant's evidence, it was still plainly impossible to locate the grant by its words of description; then, the instruction given by the Circuit Court, was proper.

The argument assumes that the second corner is four and a half miles above the mouth of the lead stream on the Maramecq, and the beginning corner at the mouth of the streamlet; that this is the front; that the north-western side line meanders the lead stream to the furnace; and then runs straight through the Great Mine, extending to a point beyond eighteen miles in depth from the mouth of the streamlet; that, from this last point, a line must be drawn four and a half miles long, and corresponding in its course to the front line on the river; and, from the termination of this line, one must be drawn to close on the upper corner on the river. This, is the theory of a survey predicated of the translation relied on in this court. No mode of survey is here claimed, as being indicated by the translation furnished to the Circuit Court, and on which the instruction is founded.

As the court below was influenced, in its construction of the grant, by the objects claimed by the plaintiffs, and admitted to exist on the ground, so this court must look to the same source of information for aid, in coming to a practical result. Renault's furnace is not found on the map presented to us, but the Great Mine is. We must assume, however, for the purposes of this action, that the furnace lies so high upon the Mineral Fork as that a straight line run from it to the Great Mine, would include

21 *

the land sued for. A survey, made on this assumption, would require a line so acute to the Mineral Fork, as to strike the Little Maramecq River not far above the upper corner on the river, and give the grant the form of a triangle. Place the furnace on any part of the Mineral Fork where probable conjecture can locate it, and still the second line, as here claimed, (running through the furnace, and the Great Mine,) would have an acute angle in it, so that no depth could be obtained by this mode of survey. Nor could a corresponding line to the front on the river be obtained; nor a line be laid down corresponding to the north-western side line; as this hypothetical line would vary so much in its courses as not to afford space for the two other lines. We can say, with entire confidence, that no such theory of survey can be carried out, taking the objects called for and found as the governing rule; and it is equally certain, in our opinion, that no specific boundaries were contemplated as having been given to Renault's grant when it was made, but that the lines were to be afterwards established by survey, as in cases of Spanish concessions covering improvements where the exterior boundaries were left to the discretion of the surveyor.

We are therefore of opinion, that the Circuit Court properly held that the grant did not separate any specific tract of land from the public domain, and that the jury could not locate it.

The court having held that the plaintiffs had no title to support their action, it was useless to give any further instructions: nor does it matter whether those given in addition to the first one were right or wrong.

We therefore order that the judgment be affirmed.

### *Order.*

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Missouri, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby affirmed, with costs.