## MARTIN a. THE MAYOR, &c., OF NEW YORK.

*New York Common Pleas; Special Term, October,* 1860.

JUSTICE'S JUDGMENT DOCKETED IN COUNTY CLERK'S OFFICE. — MARINE COURT.—COMPTROLLER'S APPLICATION TO OPEN JUDG-MENT.

The New York Marine Court cannot open judgments rendered by them, unless the same were obtained by default.

The act of 1859, giving the comptroller power to take all necessary means to open collusive and fraudulent judgments against the city, does not give to the Marine Court such power.

Though a transcript of such judgment has been filed in the county clerk's office, the Common Pleas have no power to open the judgment.

The provision of section 68 of the Code, as amended in 1851,—that judgments of such a court, when docketed in the county clerk's office, shall be deemed judgments of the Common Pleas,—means that they are to be so considered, simply for the purpose of enforcement.

When a transcript of a judgment recovered in the Marine or in a Justice's Court has been filed in the county clerk's office, the court where the judgment was

recovered can no longer issue execution, but the judgment must be enforced by an execution in the Court of Common Pleas alone.

On an application by the comptroller to the Common Pleas to open a judgment against the city, recovered in the Marine Court, the proper course is to enjoin the plaintiff from proceeding, without prejudice to his right to sue on the judgment in a court of record.

Proceedings to open four several judgments recovered against the defendants by George Martin, Oliver Valentine, H. F. Gilmore, and Samuel Nusam, respectively.

These actions were all originally commenced in the Marine Court, and the judgments were there obtained. Transcripts were then filed in the county clerk's office, and executions thereon issued, as out of the Court of Common Pleas.

I. Motion in the Common Pleas, by the comptroller, under Laws of 1859, chapter 489, section 5, to vacate the judgment of each of the above plaintiffs against the defendants.

*Wm. Curtis Noyes,* for the motion, was about stating the grounds of the application, when

*Richard Busteed,* counsel for each and all of the plaintiffs, objected, that the Court of Common Pleas cannot entertain a motion to vacate a judgment of the Marine Court on the mere filing of a transcript thereof in the county clerk's office. (McCunn *a.* Barnett, 2 *E. D. Smith,* 521.)

By the Court.—Daly, J.—This court can only acquire jurisdiction by appeal over cases which have been tried in the Marine Court. The filing of the transcript is merely for the purpose of rendering the judgment a lien on real estate, and of issuing execution thereon to the sheriff of the county.

On motion of *Mr. Noyes,* the court directed an order to be entered in each of these causes, postponing the further hearing of this motion for ten days, and enjoining the plaintiffs from proceeding to enforce their judgments in the mean time.

II. An application similar to the above was then made in the Marine Court.

*Elbridge T. Gerry*, for the motion.

*George R. Thompson*, opposed.

BY THE COURT.—MAYNARD, J.—The motion made in these cases, is to vacate the several judgments rendered in favor of the plaintiffs on the ground of collusion or fraud, or for certain irregularities alleged to exist by the defendants. It is admitted that these judgments were rendered by this court, after a regular and fair trial, at which both parties were represented. It has been repeatedly decided by the Court of Common Pleas, that this court cannot open judgments rendered by it, unless the same were obtained by default. But it is urged on the part of the defendants, that the fifth section of the tax-levy act, gives this court authority, as other courts, to open judgments against the defendants. That section gives the comptroller the right, when he believes that a judgment has been obtained by collusion, or is founded in fraud, to apply to the court, and take such steps to open and reverse the same as are necessary. Assuming that this court has no power to open judgments rendered by it after trial, I cannot think that the language of that section confers this new power upon it. This is essentially a statutory court, and its power is confined strictly within the limits prescribed by statute. It can take no power by implication. The question raised by counsel as to the constitutionality of the act, the extent of the power it confers upon the comptroller, and the questions of fact raised in these cases, under the view I have taken, it is unnecessary for me to examine.

The motion must be denied, with costs in each case.

---

III. The cases then came up again in the Common Pleas, on an order to show cause, on which—

*Wm. Curtis Noyes*, moved to make the stay of proceedings perpetual, restraining the plaintiffs from taking any further proceedings in the enforcement of their judgments; and urged in support of his motion—I. The judgments are judgments of this court. (*Code*, § 68; Sholts *a.* Judges of Yates Co., 2 *Cow.*, 506; Ginochio *a.* Figari, 2 *Abbotts' Pr.*, 185.)

II. A judgment obtained by fraud may be set aside on bill filed, and in some cases if money is paid out, it may be recovered back. (Moses *a.* Macferlan, 2 *Burr,* 1005; *Greenl. Overr. Cases* (ed. 1856), 340, where the cases are cited in which this case is limited; Wright *a.* Miller, 4 *Seld.,* 9; Dobson *a.* Pierce, 2 *Kern.,* 156; Cooper *a.* Ball, 14 *How. Pr.,* 279.)

III. This court having power over its process may, on motion, restrain the parties from abusing it, by perverting it to the enforcement of a fraudulent judgment. 1. Where the inferior court has no power to grant relief, a court of equity, in cases of fraud, will always interfere, and forever enjoin the party obtaining the judgment from proceeding thereon. (Floyd *a.* Jayne, 6 *Johns. Ch.,* 479.) 2. And whenever a valid judgment at law has been iniquitously obtained, equity will annul what has been improperly done under it. (Bissell *a.* Bozman, 2 *Dev. Ch.,* 160; Livingston *a.* Hubbs, 2 *Johns. Ch.,* 512.) 3. Wherever the court has power to make an order, in consequence of having jurisdiction over the subject-matter of the suit or proceeding, and which a person is bound to obey in consequence of his being either actually or constructively a party to the suit, it may enforce obedience to such order by the process of injunction. (Matter of Hemniss, 2 *Paige,* 317; Colt *et al. a.* Cornwall, 2 *Root,* 109.) This last case is directly in point, being on a petition in the nature of a motion to restrain the issuing of an execution at law, and the same principle is involved in the case in *Paige.* 4. So, satisfaction of a paid judgment may be compelled on motion; a bill in equity is unnecessary. (Briggs *a.* Thompson, 20 *Johns.,* 294.) So to set aside a judgment for fraud. (McLaren *a.* McLaren, 6 *Wend.,* 537.) It is now a well-settled general principle, that in all cases where an *audita querela* would lie, relief may be had on motion addressed to the equitable power of the court. (Baker *a.* Ulster Co. C. P., 4 *Johns.,* 191; *Graham's Pr.,* 2 ed., 450–1; Pleim *a.* Henshall, 10 *Bing.,* 24.) And although that remedy is applicable mainly to matters occurring after judgment, yet the rule is the same as to all matters happening before, of which the defendant could not avail himself, or from the use of which he was improperly excluded prior to that time.

*George R. Thompson,* opposed.

Martin *a*. The Mayor, &c., of New York.

By the Court.—Daly, J.—Judge Maynard decided upon the application made to him, that he has no power to open the judgment, and I think there can be no question as to the correctness of that decision. The fifth section of the act of 1859, for raising money by tax (*Laws of* 1859, 1127), merely authorizes the comptroller to take all proper and necessary means to open and reverse judgments obtained against the city by collusion, or which are founded in fraud. The Marine Court, when the act of 1859 was passed, had no power to open a judgment, unless it was obtained by default, nor to reverse one, except upon an appeal to the general term of that court, and there is certainly nothing in the clause quoted from that act, giving to the Marine Court any such power. By the filing of a transcript of the judgment with the county clerk, it became, for the purpose of enforcing it against both real and personal property, a judgment of this court, and execution thereafter could issue only out of this court. (Sholts *a*. Judges of Yates County, 2 *Cow.*, 506.)

The Code (§ 68) declares that when the transcript is docketed it shall have the same effect as a lien, and be enforced in the same manner as, and be deemed a judgment of the Court of Common Pleas. We have never understood the words " and be deemed," introduced by the amendment of 1851, as giving us the same power that we have over one of our own judgments of opening it, allowing a party to come in and defend, or setting it aside for good cause. When we open one of our own judgments, the cause continues in this court, and we have control of it, until it is again finally disposed of. Upon setting aside a judgment, the parties are placed in the position in which they were, before the judgment was recovered; but if a judgment transferred to this court by the filing of a transcript is set aside, there is nothing more remaining in this court. The judgment of the court below still stands; and the Legislature have not indicated how, or in what way, the cause could be heard again. By the act of 1853, specific authority is given to the Marine Court to open judgments obtained by default, showing very clearly that the Legislature intended, when the discretionary power of opening a judgment was to be exercised, that it should be exercised in the court where the previous proceedings have been had. We understand the amendment of 1851,

therefore, as meaning nothing more than that the judgment is to be deemed a judgment of this court, simply for the purpose of being enforced against both real as well as personal property; the words "shall be deemed," may have been thought necessary to prevent any question arising as to the validity of titles to real estate derived from sales made under such judgments. We undoubtedly have control over it, as we necessarily possess the power of staying proceedings upon the execution, and there is sufficient in the affidavit of the· comptroller to invoke the exercise of our discretionary power.

But the defendant denies that there has been either collusion or fraud, and swears that he rendered the services for which judgment has been obtained. If we were, as requested, to enjoin the plaintiff perpetually from enforcing the judgment by execution, we should cut him off from all opportunity of repelling the imputation of fraud or collusion, or of establishing the validity of his claim.

In a case so peculiar as this, I suppose the proper course would be, to enjoin the plaintiff from proceeding to enforce his judgment, but without prejudice to his right to bring an action upon it in a court of record. In such an action the defendants could apply for such affirmative equitable relief against the judgment as they may be entitled to. They could, by way of defence to the action, obtain all the relief which, in analogous cases (Floyd *a.* Jayne, 6 *Johns. Ch.*, 479; Livingston *a.* Hubbs, 2 *Ib.*, 512; Bissell *a.* Bogman, 2 *Dev. Ch.*, 160; Matter of Hemiup, 2 *Paige*, 317; Colt *a.* Cornwall, 2 *Root*, 109), was obtained before the Code by a bill in equity. (Arndt *a.* Williams, 16 *How. Pr.*, 244.) To this extent, therefore, the motion is granted.

The other three cases being in all respects like this, the same disposition is made of the motions in these suits.*

---

* The order settled and entered in each and all of the above cases is as follows:

After reciting the various motions and proceedings as above set forth, it provides:

"That each and all of the said plaintiffs in the above-entitled actions respectively, and all others claiming by or under them, or any of them, be, and they are hereby perpetually enjoined and restrained from proceeding to enforce the aforesaid judgments, and each of them, by them obtained against the said defendants, by any process or proceeding whatever, except by bringing suits on the

said judgments in a court of record; and that in such suits the defendants be at
liberty to set up by way of defence thereto, any matters that might have been
interposed as a defence to the said actions, and each of them, before the judgments
were therein obtained as above set forth."