## NEW YORK COMMON PLEAS.

GEORGE MARTIN agt. THE MAYOR, ALDERMEN, AND COMMONALTY OF THE CITY OF NEW YORK.

H. F. GILMORE agt. THE SAME.

SAMUEL NUSAM agt. THE SAME.

OLIVER VALENTINE agt. THE SAME.

The marine court has no power to open or vacate its own judgments, except by regular appeal to its general term, unless such judgment was obtained by default.

The fifth section of the act of 1859, (*Laws of* 1859, *p.* 1127,) authorizing the supervisors of the city and county of New York to raise money by tax, which section gives the comptroller of that city power to apply " to the court" to open judgments against the city rendered by it, but obtained by fraud or collusion, does not give to the marine court any additional power to open judgments.

Martin agt. the Mayor, &c., of New York.

By filing a transcript of the judgment in the office of the clerk of the court of common pleas, it becomes a judgment of the latter court. The common pleas, however, has no power to open, reverse, or vacate a judgment thus rendered one of its own; that power only exists in the marine court, and in that court, only when the judgment was obtained by default.

The effect of filing a transcript discussed.

The court will, however, grant, on motion, a perpetual *injunction* against the enforcement of such a judgment on proper grounds, on motion.

If there is doubt, the proper way is to enjoin the enforcement of the judgment, without prejudice to an action on the judgment by the holder thereof, in which action the judgment debtor might have affirmative equitable relief against the judgment.

The proper course pointed out, where both the marine court and the court of common pleas have no power to open a judgment *on motion.*

*New York Special Term, December,* 1860.

In these cases the plaintiffs, after a regular trial, obtained judgments against the defendants in the marine court of the city of New York. The comptroller of the city of New York, under the act of 1859, (*Laws of* 1859, *p.* 1127,) caused a motion to be made in the court of common pleas to open the judgments, on affidavits alleging fraud in obtaining them. A transcript of the judgments had, previous to said motion, been filed in the office of the clerk of the court of common pleas. The motion was denied on the ground that the court had no power to open judgments of the marine court *on motion.* A motion was then made for the same purpose in the marine court, which was denied, the judge rendering the following opinion, viz:

MAYNARD, J. The motion made in these cases, is to vacate the several judgments rendered in favor of the plaintiffs, on the ground of collusion or fraud, or for certain irregularities alleged to exist, by the defendants. It is admitted that these judgments were rendered by this court, after a regular and fair trial, at which both parties were represented. It has been repeatedly decided by the court of common pleas, that this court cannot open judgments rendered by it, unless the same were obtained by default. But it is urged, on the part of the defendants, that the fifth section of the tax levy act, gives this court authority, as

other courts, to open judgments against the defendants. That section gives the comptroller the right, when he believes that a judgment has been obtained by collusion, or is founded in fraud, to apply to the court, and take such steps to open and reverse the same as are necessary. Assuming that this court has no power to open judgments rendered by it, after trial, I cannot think that the language of that section confers this new power upon it. This is essentially a statutory court, and its power is confined strictly within the limits prescribed by statute. It can take no power by implication. The motion must be denied, with costs in each case.

The comptroller then made a motion in each case in the common pleas, that the plaintiffs be enjoined from enforcing their judgments.

Wm. Curtis Noyes, *for the motion*, argued:

1. That the court has power to grant relief, as a court of equity, and will always interfere on proper grounds, and forever enjoin the party obtaining the judgment from proceeding thereon. (*Floyd* agt. *Jayne*, 6 *Johns. Ch. R.*, 479 ; *Bissell* agt. *Bozman*, 2 *Dev. Ch.* 160 ; *Livingston* agt. *Hubbs*, 2 *Johns. Ch.* 512; 2 *Paige*, 317 ; 2 *Root R.* 109 ; 20 *Johns. R.*, 294 ; 16 *Wend.*, 537 ; 4 *Johns.*, 191; *Graham's Pr.*, 450-1, 2*d ed.*; 10 *Bing.*, 24.)

Geo. R. Thompson, *opposed*, argued :

1. The relief sought for by defendants cannot be obtained on a motion; the proper way is by filing a bill for that purpose. (*Moses* agt. *Macfarlane*, 2 *Burr.*, 1005; *Greenleaf's Over. Cas.*, (*ed.* '56,) 340 ; *Wright* agt. *Miller*, 4 *Seld.*, 9.)

2. If this court has no power to *open* the judgments *on a motion*, it has no power, because it happens to be a court of equity jurisdiction, to enjoin the prosecution of the judgments on a motion.

3. This motion is made by the comptroller under the fifth section of the tax levy act of 1859. That section gives him power only, when he has reason to believe a

judgment has been obtained by fraud, to apply to the court to " open and vacate the same." It gives him no power to apply for a perpetual injunction against the judgments. The statute should be construed strictly.

The section of the act of 1859 is as follows:

" Section 5.—Whenever the comptroller of the said city shall have reason to believe that any judgments now of record against the mayor, aldermen, and commonalty of the city of New York, or which may hereafter be obtained against them shall have been obtained by collusion, or founded in fraud, he is hereby authorized and required to take all proper and necessary means to open and reverse the same, and to use the name of the said mayor, aldermen, and commonalty, and to employ counsel for such purpose."

The other facts of the case appear in the opinion of the court.

DALY F., J. Judge Maynard has decided upon the application made to him, that he has no power to open the judgment, and I think there can be no question as to the correctness of that decision. The fifth section of the act of 1859 for raising money by tax, (*Laws of* 1859, *p.* 1127,) merely authorizes the comptroller to take all proper and necessary means to open and reverse judgments obtained against the city by collusion, or which are founded in fraud. The marine court, when the act of 1859 was passed, had no power to open a judgment unless it was obtained by default, nor to reverse one except upon an appeal to the general term of that court; and there is certainly nothing in the clause quoted from that act giving the marine court any such power. By the filing of a transcript of the judgment with the county clerk, it became, for the purpose of enforcing it against both real and personal property, a judgment of this court, and execution thereafter could issue only out of this court. (*Sholtz* agt. *Judge of Yates County*, 2 *Cow.*, 506.) The Code declares that it shall, when the transcript is docketed, have the same effect as a lien, and

be enforced in the same manner as, and be deemed a judgment of, the court of common pleas. We have never understood the words "*and be deemed*," introduced by the amendment of 1851, as giving us the same power that we have over one of our own judgments, of opening it, allowing a party to come in and defend, or setting it aside for good cause. When we open one of our own judgments, the cause continues in this court, and we have control of it until it is again finally disposed of. Upon setting aside a judgment, the parties are placed in the position in which they were before the judgment was recovered; but if a judgment, transferred to this court by the filing of a transcript, is set aside, there is nothing more remaining in this court.

The judgment of the court below still stands, and the legislature have not indicated how, or in what way, the cause could be heard again. By the act of 1853, specific authority is given to the marine court to open judgments obtained by default, showing very clearly that the legislature intended, when the discretionary power of opening a judgment was to be exercised, that it should be exercised in the court where the previous proceedings had been had. We understand the amendment of 1851, therefore, as meaning nothing more than that the judgment is to be deemed a judgment of this court, simply for the purpose of being enforced against both real as well as personal property, which may have been thought necessary to prevent any question arising as to the validity of titles to real estate derived from sales made under such judgments. We undoubtedly have control over it, as we necessarily possess the power of staying proceedings upon the execution, and there is sufficient in the affidavit of the comptroller to invoke the exercise of our discretionary power. But the defendant denies that there has been either collusion or fraud, and swears that he rendered the services for which judgment has been obtained. If we were, as requested, to

enjoin the plaintiff perpetually from enforcing the judgment by execution, we should cut him off from all opportunity of repelling the imputation of fraud or collusion, or of establishing the validity of his claim. In a case so peculiar as this, I suppose the proper course would be to enjoin the plaintiff from proceeding to enforce the judgment, but without prejudice to his right to bring an action upon it in a court of record. In such an action the defendants could apply for such affirmative equitable relief against the judgment as they may be entitled to. They could, by way of a defence to that action, obtain all the relief which in analogous cases (*Floyd* agt. *Jayne*, 6 *Johns. Ch.*, 479; *Livingston* agt. *Hubbs*, 2 *Johns. Ch.*, 512; *Bissell* agt. *Bozman*, 2 *Dev.*, *Ch.* 160; *Matter of Keniss*, 2 *Paige*, 317; *Colt* agt. *Cornwell*, 2 *Root*, 109,) was obtained before the Code by a bill in equity. (*Arndt* agt. *Williams*, 16 *How.*, 244.) To this extent the motion is granted.

The other three cases being in all respects like this, the same disposition is made of the motion in those suits.