M'GREW VS THE TOMBECKBEE BANK.

*Touching equity jurisdiction.*

1. A defendant to a bill in chancery, may avail himself of a want of equity in the bill,—though he has answered fully, without urging an objection to the jurisdiction.

2. Chancery will not relieve against a judgment at law, where the party has a defence which might there have been relied on; except such defence has been omitted, through circumstances, not attributable to such party's neglect or inattention.

3. A bill for discovery, where the facts are supposed to be within the knowledge of the opposite party, cannot be entertained after judgment—unless an excuse be shewn why such bill was not exhibited earlier.

4. A bill in the nature of one for a new trial at law, will not be entertained.

5. Chancery will not relieve a surety to a note, from a judgment at law, which judgment he submitted to without an attempt at a legal defence,—on the ground, that he has discovered, since the rendition of the judgment, that other sureties to the same note, have discharged themselves of the note; and on the supposition that he can effect a discovery from the plaintiffs,—the facts showing great neglect and inattention on the part of the complainant.

Bill in chancery,—determined in the Circuit Court of Washington county.

The bill alleged, that on or about the twenty-seventh day of September, A. D. eighteen hundred and twenty, orator signed a note as surety, for one Thomas H. Douglass, payable to the President, Directors and Company of the Tombeckbee Bank,

for the sum of five hundred dollars, payable ninety days after date, and made payable and negotiable at said Bank. That the said note was signed by Thomas H. Douglass as principal, and by James S. Crawford and James G. Lyon, (in addition to orator,) as sureties, was offered by Douglass for discount at the bank, and was, as orator had been informed, discounted. Orator residing at a considerable distance from the Bank, relying upon the responsibility of Douglass, the principal in the note, and supposing that he would discharge the same, when it became due, gave himself no farther trouble or concern about it. The ninety days, (the time specified for the note to run,) elapsed, and orator received no information of Douglass' failure to pay the note, nor was he ever notified that he was looked to for the payment of the note, until some time in the year eighteen hundred and twenty-five, a suit was commenced by the Tombeckbee Bank, founded on said note, against orator, and against James G. Lyon, and the legal representatives of James S. Crawford—Thomas H. Douglass having died, between the time of giving the note, and the commencement of the suit. Orator knowing of no defence at the time the suit was brought, and supposing that the amount specified in the note, was really in good faith due to the Bank, (although Douglass had been indulged an unreasonable length of time, without his knowledge or consent,) made no attempt to defend the suit, but quietly submitted to the rendition of a judgment against him. The other two defendants and co-securities of orator, employed counsel, and resisted the pay-

ment of the note—upon grounds at that time un-
known to orator.   At the term of the Circuit Court
of Washington county, at which judgment was
rendered against orator, the suit, as to the other
two defendants, (Crawford's representatives and
J. G. Lyon,) was continued, and had since been
successfully defended by them.

It appeared from the testimony of *Benjamin S.
Smoot*, one of the Directors of the Bank, taken in
writing, in the suit as to Crawford's administrator
and Lyon, founded upon the same note upon which
judgment was rendered against orator, (a certified
copy of which was annexed,) that Douglass, the
principal in the note, upon ascertaining that the
amount borrowed by him, from the Bank, added
to an amount which he expected to raise from an-
other source, would not relieve him from his em-
barrassments; and upon being advised by Col.
Smoot, the witness, to refund the five hundred dol-
lars to the Bank, and not to involve his friends, de-
termined to refund the money; and went to the
Bank in company with James S. Crawford, one of
his securities, with that view, and upon his return,
stated that he had done so.   Some time after this,
as appeared by the same testimony, Douglass made
another application to the Bank, for the loan of
two hundred dollars; and when his application was
pending before the board of Directors, D. Buchan-
an, one of that body, remarked, that Mr Douglass,
a short time previous thereunto, obtained a dis-
count for five hundred dollars.   Col. Smoot stated,
that the five hundred dollars had either been return-
ed, or not drawn out of the Bank, by Douglass; and

the acting cashier of the Bank, Francis H. Gaines, now deceased, being appealed to, stated that the money had been refunded by Douglass; and upon his statement, the two hundred dollars were loaned to Douglass.

Orator further stated, that he could not have availed himself of this defence at law, because a a knowledge of these facts did not reach him, till long after the judgment had beed recovered against him. Orator indulged a hope however, after the testimony of Col. Smoot, one of the Directors of the Bank, came to the knowledge of the present managers of that institution, that they would cease to harrass him with a claim, neither founded in equity or good conscience; but in this reasonable hope, he had been deceived. An execution founded upon the judgment aforesaid, for the sum of five hundred and forty-six dollars, debt, together with the sum of one hundred and forty-six dollars, damage, by way of interest, besides the sum of eighteen dollars and eighteen cents, costs of suit, was then in the hands of the sheriff of Marengo county, and would be levied upon the property of orator, unless he should be relieved by the interference of a Court of Equity. In tender consideration whereof, and for as much as orator was remediless by the strict rules of the common law, and relievable only in this honorable Court, he respectfully prayed a writ of injunction;—which was granted.

The defendants answer stated, that on or about the twenty seventh day of September, in the year of our Lord, one thousand eight hundred and twen-

ty, a note signed by Thomas H. Douglass as principal, and James G. Lyon and James S. Crawford and John M'Grew as securities, for the sum of five hundred dollars, was discounted by the Tombeckbee Bank, and that the proceeds of the said note were placed to the credit of the said Thomas H. Douglass, and were drawn from the said Bank, and paid over to the said Thomas Douglass, upon his check, as would appear by the said check, thereto annexed, and made a part of the answer.

The defendants answer further said, that the said Thomas H. Douglass did not, nor did any other person for him, at any time whatever, return to the said Bank, the proceeds of the said note, or pay to the said Bank, the amount of the said note; which note was thereto annexed, and made a part of the answer. They further said, that the Books of the said Bank, kept by the said Francis H. Gaines, who was a clerk in the said Bank, shew, that the note never had been paid,—that the funds of the said Bank were deficient to the amount of the proceeds of the said note—that the said note had always remained in the possession of the said Bank, from the time of the discount of the same—and the check of the said Douglass, from the time the money was drawn. These respondents could not believe, that if the said Thomas H. Douglass had paid the said note, he would have permitted it to remain in Bank, together with his check for the proceeds, without any evidence of payment; nor could they believe that the cash account of the said books of the said Bank, would, from the time of the discount of the said note, have been deficient to the

amount of the proceeds of the said note, if the same had been paid; nor that the books of the said Bank, kept by the said Francis H. Gaines, as clerk, would, if the said note had been paid, have shewn the same note to have been unpaid, and still due.

Respondents further said, that if the declarations attributed to the said Francis H. Gaines, by Col. Benjamin S. Smoot, were made by him, it was contrary to the fact, contradicted by the books of the bank, and by the acts of the said Francis H. Gaines, as clerk in the said bank : and they insisted that the declarations of the said Francis S. Gaines were inadmissible, as testimony, and could not be received by the Court.

Respondents further replied, that there was no trial on the suit instituted by the said bank, on the said note, against the administrator of James S. Crawford and James G. Lyon : that the said suit was dismissed by the bank, because the estate of the said James S. Crawford was insolvent, and nothing could be made, by an execution against the estate of the said James G. Lyon; and also, because the bank already had a judgment on the note against the complainant, whom they considered sufficient for the payment of the same; and because they did not wish to incur expense, in obtaining judgments against Lyon, and the estate of Crawford, when such judgments would be unavailing.

At the April term, eighteen hundred and thirty, the case coming on to be finally heard, the injunction was dissolved, and the bill dismissed; and thereupon the complainant took a writ of error.

*Hopkins*, for the defendant in error.

COLLIER, C. J.—In May, eighteen hundred and twenty-eight, the plaintiff exhibited his bill, on the equity side of the Circuit Court of Washington. The bill states, that about the twenty-seventh September, eighteen hundred and twenty, Thomas H. Douglass, as principal, and James S. Crawford, J. G. Lyon, and the plaintiff, as his securities, made their promissory note for the sum of five hundred dollars, payable ninety days after date, to the defendant—which note defendant discounted. That the plaintiff resided at a considerable distance from the Tombeckbee Bank; and, confiding in the responsibility of his principal to discharge his note, gave himself no concern about it,—nor had notice, that he was looked to for payment, until some time in the year eighteen hundred and twenty-five, a suit was brought by the defendant against him, James G. Lyon, and the representatives of James S. Crawford—Douglass having previously died—. his representatives were not sued.

The plaintiff knew of no defence, at the time suit was brought; but, supposing the amount of the note was really due to the defendant, (though his principal had been unreasonably indulged, without his knowledge,) quietly submitted to a judgment against him.

At the term of the Court, when judgment was rendered against the plaintiff, Lyon and the representatives of Crawford caused the suit to be continued as to them, and have since defended it successfully.

5 P.          70

The bill then states circumstances, tending to show the note to have been paid off, by Douglass, soon after it was discounted by the bank, without having used the proceeds—and avers the plaintiff's belief, that it was fully discharged, by his principal. That these circumstances were unknown to the plaintiff, until long after the judgment was obtained against him,—so that he could not have defended at law.—That he had hoped, the disclosure made upon the trial of the case against Lyon and Crawford's representatives, would have induced an abandonment of the judgment against him; but in this he has been disappointed.

The bill then prays an injunction, which was awarded.

At the Spring term of the Circuit Court in eighteen hundred and thirty, the injunction was dissolved, the bill dismissed, and execution directed against the plaintiff's security in the bond, for an injunction.

The first question raised is this,—has Equity jurisdiction of the case disclosed in the bill?

It has been repeatedly determined here, that a defendant may avail himself of a want of Equity in a bill, though he has submitted to answer fully, without pointing out any objection to the jurisdiction of the Court.—See *Herbert & Kyle vs Hobbs & Fennell,* 3 Stew. R. 9; *Moore vs Dial,* ib. 155.

Where a party has a *defence* which might have been made at law, Equity will not relieve, unless he was prevented from making it available by circumstances not attributable to his neglect or inat-

tention.—1 Caro. Law Rep. 534; 3 Dessaus. 323; 5 Cook's R. 175; Hard. R. 173; 1 Bibb R. 173.

The plaintiff's defence was clearly legal; yet no effort was made by him, to avail himself of it, at law. When sued, instead of resorting to the officers of the Bank for information, or advising with his co-sureties, and uniting with them in a defence, he allowed a judgment to be rendered against him. We take the allegations of his bill to be true, and think they establish great neglect and inattention to his interest.

The facts disclosed would not bring the plaintiff within any established rule, which governs Courts of law, on applications for new trials, and if they would not avail there, surely they cannot be held sufficient in equity. No excuse is stated why the plaintiff did not endeavor to be informed of his rights pending the suit at law, other than the confidence he had in the honesty of the demand made by the defendant. It may be his misfortune, that he was too confiding,—it will not however authorise a Court of Chancery, to entertain a defence purelylegal. ( *Williams v Baldwin*—18 Johns. 489.)

If the plaintiff had distrusted the justness of the cause of action, and believed the note was paid off, he might before judgment, have gone into equity, and elicited a disclosure upon oath, from the officers of the Bank. But a bill for a discovery, where the facts are supposed to be peculiarly within the knowledge of the opposite party, cannot be entertained after judgment, unless an excuse is shewn why it was not earlier exhibited. (14 Johns. R. 63. 1 Johns. C. R. 91.)

Again: the plaintiff's bill, is in the nature of a bill for a new trial in a Court of law, and in that view, cannot perhaps be entertained. (*Anderson vs Roberts*, 18. Johns. R. 515. *Harrison v Harrison.*— 1 Littell's R. 140.)

It is objected to the decree, that it directs an execution against the surety in the injunction bond. Such direction can be considered as nothing more than an act of supererogation, for the statute of eighteen hundred and twenty-six, (Aik. Dig. 1 ed. 291,) enacts, that such bond, on the dissolution of an injunction, shall have the force and effect of a judgment in itself.

This view being decisive of the case, we are relieved from considering the other points made in the argument.

The decree is affirmed, with costs.

GOLDTHWAITE J. not sitting.