# REPORTS

## OF CASES ARGUED AND DETERMINED

## JANUARY TERM, 1841.

---

LEE & NORTON v. THE INSURANCE BANK OF COLUMBUS, ET ALS.

1. A party who seeks the aid of a Court of Chancery, after a judgment at law against him, on the ground that he was ignorant of the defence, must show that, by the exercise of ordinary diligence, the defence could not have been discovered ; or that he was prevented from doing so by fraud, accident, or the act of the opposite party, unmixed with fault or negligence on his part.
2. A court of equity will not deprive a party of a legal advantage fairly obtained, where in *foro conscientiæ*, he has a right to retain the money in controversy.

Error to the Court of Chancery at Montgomery.

THIS was a bill in Chancery, filed by Henry P. Lee and Julius A. Norton, originally in the Circuit Court of Montgomery county, and afterwards transferred to the separate Chancery Court at Montgomery.

The bill charges, that the complainants were accommodation indorsers on a bill of exchange, for four thousand dollars, drawn by Mosely Hooker, on Bliss, Gause & Co. of New Orleans. The bill was also indorsed by H. Pierce & Co., and was made and indorsed to enable Hooker to raise money thereon, which he did, by selling the same to one Joseph Hutchinson, who was the agent of the Insurance Bank of Columbus, a chartered banking company of the State of Georgia, who supplied the agent with their own bank notes for that

purpose, and who purchased the bill in question at Montgomery, in this State. The bill was transmitted to the Bank, in Georgia, who, on its maturity, brought suit thereon against the complainants, in the name of Beverly Chew, for the use of Thomas Hoxie, a citizen of Georgia, and recovered judgment thereon. The bill further charges, that neither Chew nor Hoxie have any interest in the bill, but that the same is the property of the Insurance Bank of Columbus. The bill further charges, that the complainants *were ignorant* of the facts above set forth, until since the rendition of judgment.

The Insurance Bank answers and admits the material facts charged in the bill, except the ignorance of the respondents that Hutchinson was the agent of the Bank; as to which, it insists that by ordinary diligence it could have been discovered.

Chew and Hoxie also answered—but their answers are not material to the decision of the cause.

The Chancellor dismissed the bill for want of equity, from which the complainants prosecute this writ of error.

Mr. Dargan, for plaintiff in error, insisted that a corporation of another State could not transmit its funds to this State, and, through the medium of an agent, carry on the business of banking within our limits; which he maintained was the character of this transaction. That it would be allowing to the citizens of other States, what was denied to our own. That, by the Constitution of Alabama, no bank could be chartered unless two-fifths of the capital belonged to the State. This, he insisted, was at least equal to a prohibition by the Legislature; and the comity of nations has never been extended so far as to permit foreigners to do that which was forbidden to the citizen, or which was against the policy of the country. He cited Earle v. The Bank of Augusta, 13 Peter's Rep. 519; and insisted that this case was distinguishable from that.

Ormond, J.—The first question to be considered is, whether the Court has jurisdiction. The established doctrine of this Court is, that equity will not interfere after a judgment at law, unless the party can impeach the justice of the judgment by facts, or on grounds of which he could not have availed

himself, or was prevented from doing so by fraud or accident, or the act of the opposite party, unmixed with negligence or fault on his part.    French v. Garner, *et al.* 7th Porter, 549.

The ground alledged in the bill for not defending the suit at law is, that the plaintiffs in error were ignorant that the bill of exchange was the property of the Insurance Bank of Columbus, and had been purchased within the limits of this State by an agent of the Bank, and with its own notes placed here for that purpose.    This ignorance of the facts is accounted for in the bill, by the statement that the plaintiffs in error were accommodation indorsers merely, and indorsed the bill to enable Hooker, the drawer, to raise money upon it.    It cannot be presumed, in the absence of proof to the contrary, that he was not acquainted with the facts of the case ; and we must suppose that an inquiry of him would have resulted in giving them the necessary information.    This was not only a want of that diligence which the law exacts, but must be considered as culpable negligence.

Nor was this ignorance of the facts of the case attributable to the Bank ; indeed it is not so charged in the bill.    It is true, it is stated, that the suit was brought in the name of one Beverly Chew for the use of one Hoxie, who, it is charged, had no interest in the bill ; but if the suit had been brought by the Bank, it would have given them no information of the defence now relied on.    The *gravamen* of the bill is not that the bill of exchange was the property of the Bank, but that the bill was purchased within this State by the Bank with its own funds placed there for that purpose.    These facts the plaintiffs in error might have known previous to the judgment at law, or at least they do not show that they made any effort to ascertain from their principal or from any other source, whether there existed any defence to the bill which they had indorsed. The result is, in the language of this Court, in the case of Cullum v. Casey & Co., 1 Alabama Reports, 357, (new series,)— the plaintiffs must abide the consequence of a rule, which, although it may operate hardly in particular cases, the best interests of society requires should be inflexibly adhered to.

This view of the case dispenses with the necessity of examining the important and delicate question presented by the

counsel for the plaintiffs in error; for, conceding that this position is correct, it would be a departure from the established principles of a court of equity to interfere and prohibit the collection of the money after a judgment at law. If the purchase of the bill, under the circumstances, was unauthorized by law, its value was realized by its sale, and, in *foro conscientiæ*, it ought to be repaid to the Bank. No equity therefore arises from the mere fact that the act was unauthorized, nor would it be equitable or just that a court of equity should deprive the Bank of an advantage fairly obtained by it at law. The question therefore of the legality of the transaction does not enter into the decision of this case.

These views dispose of the cause, and the decree is affirmed, with costs.