# Wheeling.

## ROBERT T. HARVEY *vs.* JOHN SEASHOL.

### January Term, 1870.

A judgment is rendered against S., as one of the sureties of a sheriff, for the amount of certain receipts given to a circuit court clerk for fee bills, whilst S. is in the State of Ohio, having gone there from fear of violence from the rebels; process upon which the judgment is obtained is served upon him just prior to his departure. After his return he learns of the existence of a receipt, in the hands of a party with whom the papers of the sheriff (the latter having gone from the State) were deposited for safe keeping during the war, which purported to be in full of the claims and receipts upon which the judgment was predicated. HELD:

> That S., not having any knowledge of the existence of any defense at the time the judgment was rendered, and not only so, but the evidence of that defense, which was a receipt, having been discovered after the judgment was rendered, it is a proper case for the interposition of a court of equity by injunction.

In November, 1864, a bill was filed in the circuit court of Putnam county, by John Seashol against William Grass and Robert T. Harvey, the object of which was to enjoin and perpetually restrain Harvey from all proceedings to collect the amount of a judgment, which he had recovered against the complainant in the circuit court of that county, at the March term, previous thereto, for the amount of certain fee bills due to Harvey from Grass, as Sheriff of that county, and for which Seashol was liable, as a surety of Grass, upon the ground that the fee bills had been, in fact, accounted for to the defendant by Grass, and a receipt in full for the same had been given by defendant to Grass, which he, Seashol, had only found amongst the papers

of Grass since the judgment had been rendered, and which, therefore, could not be used in defense of the action against him, which resulted in the judgment.

The injunction prayed for was allowed on the 3d of November, 1864.

On the 16th of March, 1865, Harvey filed his answer to the bill. In this he stated that, in the years 1857 and 1858, he was clerk of both the circuit and county courts of the county of Putnam, and that William Grass was the sheriff of the county. That on the 1st of September, 1858, he, as clerk of the courts, placed in the hands of Grass, for collection, fee bills from both courts, amounting together to the sum of three hundred and sixty-three dollars and sixty-four cents, and took from him two several receipts for the same, and that to recover the amount of these receipts he had brought the suit referred to in the bill, against the sheriff and his sureties, and at the March term, 1864, of the circuit court of Putnam county had recovered judgment against the complainant, he being the only one one of the defendants on whom the process had been served, for the amount of the receipts, with interest and costs. He admitted the giving of the receipt in the bill mentioned, but denied that it was for any part of the moneys for which he had thus recovered judgment. He stated that it was given for fees due him on writs of *capias pro fine*, and in part for an amount due him on other receipts; that Grass held tax tickets against him individually, and as guardian for the heirs of one James Staton, amounting to about one hundred and forty dollars, and was pressing him for the same; that he, in return, urged a settlement with Grass, to which he consented; that in looking for his receipts for the purpose of making such settlement, he could only find the receipts of Grass for the fees on writs of *capias pro fine* and other fees above mentioned, amounting to the sum of one hundred and sixty dollars, but was unable to find the other receipts (on which the judgment had been rendered) which had been misplaced amongst his papers; that Grass was

very desirous of getting a receipt in full from him, although he had only settled to the amount of one hundred and sixty dollars, as the receipts for the fee bills amounting to three hundred and sixty-three dollars and sixty-four cents, of the 15th of September, 1864, could not then be produced because mislaid, and respondent only consented to make the receipt for one hundred and sixty dollars received "in full," upon the distinct understanding that if the receipts for the fee bills delivered upon the 15th of September, 1858, should be found, they should be accounted for; and with that understanding he gave the receipt; he denied that the receipt in fact embraced any part of the moneys due by the receipt of the 15th of September, 1858, and relied upon his judgment at law for the same.

On the 20th of November, 1865, the cause was heard upon the bill and answer, and the exhibits and depositions filed. Whereupon the court dissolved the injunction with leave to the complainant to move to reinstate at the next term on further proof.

On the 11th of May, 1866, the complainant, on leave, filed a supplemental bill in the cause, and upon his motion the injunction which had been dissolved, was reinstated. In this supplemental bill the complainant, after making the original bill and the answer thereto, and the deposition of J. L. Middleton, which had been taken on behalf of the complainant, and all the provisions, orders and proceedings in the cause part thereof, proceeded to charge that, during the war, he was a well known and out-spoken Union man, and for that reason had incurred the ill-will and animosity of the rebel sympathizers in his neighborhood, and had experienced their threats and actual hostile demonstrations to such an extent as to render it proper and prudent for him to abandon his home, and move with his family to the State of Ohio, where he was at the time of the judgment, in March, 1864; that he was afraid at that time, for the reason thus stated, to return to the county of Putnam, and that he did not know of the defense he might have made to the

suit, or of the existence of the receipt referred to in his orig-
inal bill; nor did he learn it until some time after the judg-
ment was rendered; that he failed to make the proper de-
fense to the action, in consequence of the disturbed condi-
tion of the country, fear for his own life and that of his family,
and want of knowledge of the existence of the receipt before
mentioned. He referred to the statement made by the de-
fendent, and the evidence in the case, as to the circum-
stances under which the receipt was given, and insisted
that the same was intended either to be a discharge in full
of all claims of the defendant against Grass, as sheriff, or
for the purpose of defrauding the Commonwealth of Vir-
ginia, the sureties of Grass, and all others interested in the
office of sheriff, and that either ground was sufficient for
the court to perpetuate the injuntion. He further stated
that the other sureties lived in the county of Putnam, but
the process in the suit against them was served upon him
only, and that he only returned to West Virginia to reside,
in the fall of 1865. He made Harvey and Grass defendants,
and prayed the reinstatement of the injunction, and its
perpetuation and general relief.

On the 14th of November, 1866, Harvey answered the
supplemental bill. He admitted the previous proceedings
in the cause as therein stated, but very much questioned
the complainant's claim to be considered so staunch and
true a Union man as he pretended, or to have been an
object of peculiar dislike and hatred on the part of the
rebels and their friends and sympathizers, as he alleged.
On the contrary, he stated that the complainant, and espe-
cially his wife, were, for a long time, regarded as to be
numbered amongst those friends and sympathizers; that
the annoyance of which complainant complained, was
chiefly the work and mischief of his neighbors. He alleged
that the complainant leisurely sold off his property, real
and personal, some time in 1864, and, it might be, to avoid
the troubles and anxieties of border-life, moved to the State
of Ohio, where he may have been when the judgment was

rendered against him; but if so, it was equally true that he returned to Putnam county, on several occasions, to attend to his business. He charged that if complainant did not know of the receipt before the judgment, it was wilful ignorance on his part, because all the official papers of Grass had been, for a long time, at the house of one of the sureties, at his instance, and were, at all times, perfectly accessible to the complainant and the other sureties; that the reasons assigned by the complainant did not prevent him from attending to his other business, and that it was at all times perfectly in his power to have known of the receipt before the judgment, and consequently his reason or excuse for not making his defense in the action at law was frivolous and untenable. He reiterated the statement in his answer to the original bill as to the circumstances of the receipt for 160 dollars, purporting to be "in full;" stated that he was unwilling and reluctant to give it in that form, as, in fact, he only received 160 dollars, because he was satisfied he had misplaced or lost some of Grass' official receipts; but as he had asked Grass for a settlement, and Grass now in turn demanded a full settlement, and as it was possible he might be mistaken in thinking that he had other receipts of Grass, he concluded that the latter was entitled to a full settlement, and accordingly consented to give the receipt in the form desired by him, with the perfect understanding, however, that if he found other receipts, he (Grass) was to be officially liable for, and to pay them, notwithstanding the receipt in full then given. He denied any collusion with Grass, or any intention to defraud his sureties or anybody else, in giving the same, or any knowledge of any fraudulent purpose on the part of Grass in taking it. He considered that he was only yielding what Grass had a right to demand, a final settlement, as matters then appeared, but with a distinct agreement that the receipt was to be for all demands against Grass, provided the amount named did, in fact, cover all demands. He admitted that the persons named in the bill were the suerties

of Grass, but as the process had only been served upon the complainant, he had the legal right to demand a judgment against him alone; he could not perceive that he was under any obligation to surrender this right, and especially as the complainant was, of them all, the most vigilant, attentive and sensitive, as to anything that might affect his interests; and he would be wide of the mark, if possible, in seeking an advantage of the complainant in the manner indicated in the bill. He relied upon his defense as a full answer to the complainant's claim for relief.

To this answer the complainant replied generally.

The receipt of the defendant, referred to, bears date on the 1st of November, 1859, and purports to be for 160 dollars, in full for fee bills due him up to July, 1858, placed in the hands of Grass for collection in 1857 and 1858, and costs on *capias pro fine.*

The deposition of Dr. J. L. Middleton was taken for Harvey. He proved that he was present at the settlement between him and Grass. That it was made precisely under the circumstances and in the manner stated by Harvey in his answer, and that the receipt was given by Harvey, with the distinct understanding that if the lost receipts of Grass should be found, Grass and his sureties were to pay the amount due by them. He further proved that afterwards whilst examining a file of papers in the clerk's office, he (the witness) found the receipts of Grass for fees in both courts on the same piece of paper, and gave them to Harvey, and learned from him that they were the missing receipts. They purported to be given in September, 1857, and were for fee bills for the year 1857, amounting to something over 300 dollars, but he could not state the precise sum. They did not include any fees for 1858.

Charles Hix, examined for complainant, proved that complainant left Putnam county and removed to Ohio in February, 1864, and returned to West Virginia in October, 1865. He also proved that complainant was a Union man and advocated the Union cause whenever he heard him

speak on that subject, and that he was much and badly abused by the so-called rebels.

Elias Wheeler, examined for same, proved much the same as the witness, Hix, as to the political opinions and *status* of the complainant. He also proved that complainant staid several nights at the witness' house, some six miles distant from his own, on account of the rebels, and that he was induced to sell his property privately instead of at public sale when he was about to move to Ohio, for fear that the rebels might hear of the public sale and make a raid upon the day fixed for it.

George Ellis, examined for complainant, proved that the receipt in question was placed in his hands with other papers of Grass at the request of his sureties, and that he kept the same in his possession, locked up in a trunk, till the fall of 1864, and that no other person had access to to them; that in the year 1859 or 1860 he found this receipt amongst these papers, and that in the fall of 1864 he met complainant in Winfield and informed him that he had in his possession a receipt of Harvey for the amount of the judgment against complainant, and that he ought not to pay it; that complainant thought he was mistaken, but requested him if he had such a receipt to produce it, which he did on the following day, and then delivered it to complainant; that complainant appeared much gratified, and the witness was positive that this was the first knowledge complainant had of the existence of such a receipt.

B. P. Morris was deputy sheriff, and served a process of some kind on complainant, who inquired if he would serve it on the sureties of Grass on that day, to which he replied that he would not as he was about to move. He thought complainant did not regard himself as sued or noticed, individually.

Upon this state of pleadings and proofs, the cause came on to be heard on the 14th of November, 1866, when the Court pronounced a final decree perpetuating the injunction with costs to the complainant.

From this decree the defendant, Harvey, appealed to this court.

*Lee* for the appellant.
*Boggess* for the appellee.

MAXWELL, J. This case shows that Seashol, who was one of the sureties of Grass, as sheriff, did not know of the existence of any defence, at the time the judgment injoined was rendered against him. Not only the knowledge of the fact that a defence existed came to the defendant after the judgment at law was rendered, but the evidence of the defence, which was a receipt, was discovered after the judgment.

It is, therefore, a proper case for the interposition of a court of equity by injunction. *Barrett and others* v. *Floyd and others*, 3 Call., 530; 2 Tucker's Com., 476.

The decree, so far as it perpetuates the injunction, is correct, but the decree should have gone further, and set aside the judgment at law and awarded a new trial to the defendant.

The decree will have to be reversed, the injunction perpetuated to the execution, the judgment at law set aside, and a new trial granted the defendant.

Brown, President, concurred with Maxwell, J.

BERKSHIRE, J., *Dissentiente.* The appellee filed his original and supplemental bills against the appellant, in the circuit court of Putnam county, asking to enjoin the latter from the collection of a certain judgment which had been obtained in said court in favor of the appellant against the appellee, as security for William Grass, late sheriff of said county.

The judgment it appears, was for the amount of two receipts executed by Grass to the appellant, Harvey, for fee bills due him as clerk of the circuit and county courts of

said county, which receipts were dated the 15th of September, 1857.

The original bill alleges that the process in the suit in which the judgment in controversy was obtained, was served on the complainant, Seashol, and that he was soon thereafter compelled to remove to the State of Ohio, in order to avoid the rebels, who had made repeated attempts to arrest him, &c. That Grass removed to the State of Missouri in the fall of 1860, leaving his official papers in the clerk's office of Putnam county.

The giving of the receipts of the 15th of September, 1857, by Grass to Harvey for the fee bills, is admitted, but it is claimed they were settled by Grass, and included in a receipt given to him by Harvey for 160 dollars, dated the first of November, 1859, which latter receipt, it is alleged, was in full of all fee bills up to the first of July, 1858, including the two official receipts of Grass, on which the judgment was founded; and it is further alleged that the receipt for 160 dollars was not found by the said Seashol until some time after the judgment aforesaid was obtained; but no other reason is assigned why the appellee failed to defend himself at law.

The answer of Harvey to this bill denies that the receipt for 160 dollars was intended to be in full of the two receipts of the 15th of September, 1857, and avers that it did not include the same, and that it was distinctly understood between him and Grass when it was given, that the receipt and settlement then made were not to preclude Harvey from collecting the fee bills in controversy if he should thereafter find the receipts of Grass given for the same, which receipts, he avers, he could not then find, but that he afterwards found them and obtained his judgment for the amount of the fee bills included in the same.

The answer, in this respect, is fully and distinctly sustained by the evidence of John L. Middleton taken in the cause. and on motion of the appellant, the injunction awarded on this bill was dissolved.

The amended or supplemental bill alleges that the appellee was an out-spoken Union man, in consequence of which he was threatened and persecuted, and his property taken by the rebels, who threatened to kill him and his wife, and that being the object of their peculiar hatred and dislike, he was compelled, for the safety of himself and family, to leave the State and seek protection elsewhere; that he accordingly removed to the State of Ohio in February, 1864, and remained there until the fall of 1865, when he returned again to this State; that he was afraid to come into Putnam county, to attend the courts, and that he had no knowledge of the existence of the receipt for 160 dollars until September, 1864, long after the judgment was obtained against him; and the disturbed condition of the country, the uncertainty of the courts, and fear and anxiety for his life and that of his family, together with the want of knowledge of the existence of said receipt, are the reasons assigned why he failed to defend the suit at law.

The answer to this bill doubts the excessive loyalty of the appellee, avers that he sold off his property leisurely before moving to Ohio, and often returned to Putnam county afterwards to attend to his business, and that he could have attended the courts of that county without danger or hindrance; that if he was ignorant of the receipt it was wilful ignorance, as all the official papers of Grass were, and had been for a long time before, in the possession of one of the appellee's co-securities at his instance, and at all times accessible to him.

The question now to be adjudged is whether the appellee has shown himself entitled to the relief prayed for, and which was granted him by the decree complained of.

There is, perhaps, no more inflexible rule of law than that which requires diligence on the part of suitors in defending themselves at law whenever they could do so by the use of proper diligence, and hence it is that applications to courts of equity for new trials, upon the ground of after-discovered evidence are uniformly refused, unless such due

diligence to discover such evidence is both averred and proved.

If anything could induce a relaxation of the rule, the peculiar circumstances surrounding the appellee, and the extraordinary condition of the whole country at the time of the rendition of the judgment complained of, would seem to afford a justification for it in the present instance; but as no diligence in reference to the receipt relied on is alleged in either of the bills, and none whatever shown by the evidence in the cause, I do not think we would be justified in departing from the established doctrine.

On the contrary, it seems to me, that the wisdom of the rule is strongly illustrated and demonstrated by the facts of this cause, for as it appears that the official papers of Grass were in the hands of the co-securities of the appellee, or of some of them, of which fact he was cognizant, and that the receipt in question had been by them or their counsel placed in the hands of the witness, George Ellis, for safe keeping, it is quite certain that the proper diligence and inquiry on the part of the appellee would have led to its discovery. See *Black* v. *Wood*, 9 Grat., 40; *Mecum* v. *Rucker*, 10 Grat., 506; *Floyd* v. *Joyne*, 6 Johns. Chy. R., 479; *Snider* v. *Myers*, 3 W. Va. Rep., 195.

I think the decree should be reversed, with costs to the appellant here, the injunction dissolved, and the bills dismissed with costs to the appellant in the court below.

DECREE REVERSED, injunction to the execution perpetuated, and a new trial at law granted to the appellee.