## SMITH *v.* McLAIN.

(Absent, JOHNSON, JUDGE).

Decided November 17, 1877.

1877.
Special Term.

1. McL. obtained a judgment against S. and then instituted a chancery suit to enforce the judgment lien against S.'s lands; and a decree was rendered to sell the lands to pay said judgment and other judgments against S. Thereupon S. brought a suit in chancery to have the common law judgment of McL. against him, and also the decree in favor of McL., set aside and a new trial awarded him in the suit at common law; and asking an injunction to restrain the sale of his land under the decree, and the enforcement of the judgment, in which he not only made McL. defendant, but also all the other creditors, having judgment who were defendants in the chancery suit, as well as all other defendants in that suit; this bill was demurred to as multifarious, and because the defendants in the chancery suit, other than McL., ought not to have been made defendants in this suit. HELD:

I. The bill ought not to have been dismissed as multifarious.

II. It ought to have been dismissed as to all the defendants other than McL., as the enforcement of the decree in the chancery cause, which was interlocutory, could not be staid and the decree corrected by an original bill, but only by a petition for a re-hearing, in the chancery suit; and the bill ought to have been permitted to stand as an original suit, to set aside the common law judgment, the joining with this object another, which a court of equity could take no cognizance of in an original suit not rendering the bill multifarious.

2. A judgment will not be restrained by injunction on grounds purely legal, unless a defense has been prevented at law, by fraud on the one side, or ignorance unmixed with negligence, on the other.

3. A surety cannot rely on his ignorance of a substantial defense, arising out of transactions between the plaintiff in the common law suit and the principal, as a reason for opening a judgment against the surety, unless he alleges in his bill, and shows by evidence, that he took proper measures to ascertain the true state of the case, and prepare his defense in the common law action, or that he was prevented by circumstances, which rendered it impossible to take such measures.

Appeal from, and *supersedeas* to, a decree of the circuit court of Doddridge county, rendered on the 16th day of November 1874, in a cause in chancery then in said court pending, wherein F. M. F. Smith was plaintiff, and Ulysses D. McLain and others were defendants, allowed upon the petition of U. D. McLain and Robert McLain, two of the defendants below.

The Hon. C. S. Lewis, late Judge of the second judicial circuit rendered the decree complained of.

GREEN, PRESIDENT, who delivered the opinion of the Court, furnishes the following statement of the case :

On the 22d day of December 1868 U. Daniel and Robert McLain instituted an action of covenant in the circuit court of Doddridge county against F. M. F. Smith and John Lutz, Jr. The summons in the action was executed on F. M. F. Smith on December 23, 1868, and on Lutz on the 31st of the same month; and Lutz being a non-resident of this State an attachment against his property was also issued. On May 3, 1869 F. M. F. Smith appeared and demurred to the declaration and the defendant Lutz pleaded the general issue thereto and by consent of parties this issue was tried by the court, and judgment rendered against him for $1,138.50, with interest from January 1, 1869 and case was continued as to F. M. F. Smith. The agreement, which was the foundation of the action, was a covenant by John Lutz Jr. and F. M. F. Smith, to pay to U. D. McLain and Robert McLain $3.75 per thousand for all oak lumber one inch thick, and $3.50 per thousand for any and all

other lumber, said Luty might wish hauled from his mill; which they agreed to pay within sixty days from the date of the agreement, June 2, 1868, and after that at the end of every thirty days until December 1, 1868. With the declaration was filed an account by the plaintiff against the defendants, the first two items of which were: "August 1, 1868, to hauling lumber from mill to railroad as per contract, dated June 2, 1868, $590.45", and "September 1, 1868, to hauling lumber as per contract of June 2, 1868, from mill to railroad during the month of August 1868 as per settlement, $260.19" and the other items were for hauling specified quantities of lumber each day from October 1, 1868 to October 22, 1868 inclusive, Sundays excepted, amounting to $287.86, total account amounting to $1,138.50.

On the 31st day of December 1869 F. M. F. Smith withdrew his demurrer to the declaration, and plead the general issue; and by consent it was tried by the court and judgment rendered against F. M. F. Smith for $938.50 with interest from January 1, 1860, till paid, and costs. The difference between this sum and the amount of the judgment against Lutz, had been made on the attachments issued against Lutz. On this judgment the plaintiffs sued out an execution against Smith, which was returned February 17, 1870 no property found; and on February 22, 1870 U. D. and Robert McLain instituted a chancery suit in the circuit court of Doddridge county against F. M. F. Smith and others, to set aside a conveyance, by him alleged to be voluntary, of four tracts of land, to a trustee for the sole and separate use of his wife, made May 12, 1869, and to subject said land to sale to pay their judgment and the judgments of others made also defendants. After various proceedings were had in this cause, the court, on the 17th day of May 1873, rendered a decree setting aside and holding for naught the said deeds of May 12, 1869, from F. M. F. Smith to N. B. Neeley, so far as said prior creditors were concerned, and ordering that unless Smith paid these

creditors, including the complainants, the amount due them in thirty days, the four tracts of land conveyed by said deeds should be sold at public auction by commissioners, appointed for that purpose. The commissioners, pursuant to the terms of this decree, advertised these lands for sale on the 18th day of August 1873.

On August 11, 1873 F. M. F. Smith brought this suit in the circuit court of Doddridge county. In his bill he sets forth in detail the proceedings in said action of covenant and in said suit in chancery, brought by U. D. and Robert McLain against him and others, and the advertisement of said lands for sale by the commissioner. The bill alleges then, when said judgments were rendered against Lutz, and also against the complainant, Smith, that Lutz was a non-resident of this State, "and his whereabouts at the time of the trial was unknown to the complainant; and that he was unable to resist successfully the recovery of the judgment against him as the surety of Lutz, as he knew nothing of the settlements and dealings between the said Lutz and the plaintiffs in said action, and could have no access to the books of the latter, in order to ascertain the true state of accounts between the parties." The bill charges in general terms, that said judgments were obtained by fraud and gross falsehood on the part of the plaintiffs in the action, and they should be set aside; and that the decree directing the payment of the amount of said judgment was erroneous, and should be set aside; and that there was not one cent due the plaintiffs. The bill charges, "that on the 30th of September 1868 the accounts between Lutz and the McLains were all settled, the balance due them being $45.00 or $75.00, for which Lutz gave his note to them, which they had in their possession at the time of the institution of the action of covenant, and fraudulently concealed;" that the books of said Lutz kept by his clerk for the month of October showed, there was only due them $178.00 instead of

$287.86, as charged by them; and that the money, re-covered under the attachments in said action of covenant, more than paid off all that was due them; and when said decree was rendered, nothing was due the McLains; and that the decree was therefore erroneous, and should be set aside.

The complainant further alleges that " he was igno-rant of these facts in relation to said accounts, at the time of the recovery of the judgment and the rendition of the decree against him; that by accident simply he learned these facts since the rendition of the decree complained of. That said evidence was not and could not have been used at the time said decree was render-ed, because the complainant was at that time ignorant of the fact that such evidence was in existence, and could be produced." And that the complainant had nearly paid off all the other debts named in the decree, and would discharge them in a few days. " And that he was advised that inasmuch as he had discovered evidence since the rendition of said decree and the recovery of the judgment, of which he was ignorant prior thereto, and of the benefit, which for this reason he could not avail himself, he was entitled to have said judgment set aside, and a new trial granted him, and to have said decree set aside, and be allowed an opportunity to produce such evidence. The prayer of the bill is that all the parties to the chancery cause might be made defendants as well as said U. D. McLain and Robert McLain, and said commissioners of sale " to the end that the facts herein-before stated may be shown by the complainant, and the fraudulent character of said decree and judgment, and the complainant relieved therefrom; that the court will re-hear the cause in which this decree was rendered, and set aside this decree as well as the judgment at law, and grant to the complainant a new trial therein; and for gen-eral relief; and that in the meantime said commission-ers of sale should be enjoined from selling under said decree; and that U. D, McLain and Robert McLain

be enjoined from all further proceedings to enforce said decree or judgment." The injunction prayed for was awarded, and Lutz by consent was made a defendant also to the suit. The defendants filed demurrers to to this bill for want of equity, and because it was multifarious. U. D. McLain and Robert McLain also filed their joint answer. They say that soon after the agreement was made by them with Lutz and Smith, they commenced hauling; that after sixty days, to-wit: on August 1, 1868, they were entitled to be paid by the contract, but were paid nothing; that one Joseph Shoch, the agent of Lutz, gave them a statement of the amount then due, which was $590.45, which statement they file with their answer; and that on the 1st of September 1868 said Shoch as such agent gave them another statement of the amount due them for hauling in September, which was $260.19, which they also file with their answer; the statements are signed by Joseph Shoch, agent for John Lutz, Jr. The last one is in these words:

LICH RUN MILLS, September 1, 1868.

" Due this day to U. D. McLain and Robert McLain, two hundred and six dollars and nineteen cents, ($260.19), which when paid will be in full of hauling lumber &c., to date.

$2,60.19. " JOSEPH SHOCH,
" *Agent for John Lutz, Jr.*"

That they, having received no pay under said agreement, refused on September 1, 1868 to do any more hauling under said contract; and said agent Shoch agreed that he would pay them if necessary for their hauling in September out of his own moneys; and they continued hauling and said Shoch did pay them as he said out of his moneys for the hauling in September amounting to somewhat over $100.00. They further assert that they did as charged by them haul to the amount of $287.86, in the month of October and except what was received under the attachment and credited, they never received any pay for the hauling done in June, July, August and

October, which amounted to $1,138.50. and of which they kept an accurate account, setting it down in a book at the time. They say that while so doing business here Lutz resided in Pennsylvania, being here occasionally, but doing his business through agents, and that he resided there when said judgments were rendered against him and against Smith. But they say that Smith always knew where he resided and could during the pendency of the common law suit, have corresponded and consulted with him if he chose, and that Smith told one of them that about the time of the institution of the common law suit he had been to see Lutz and that he had issued an attachment against him for what he owed him (Smith). And they believed he did actually correspond with and consult Lutz during the pendency of the common law suit. That Lutz's post office was well known to all persons in Doddridge county, who had business with him, and that more or less correspondence was actually carried on with him by various persons in Doddridge' county, pending said common law suit, their letters being mailed at Smithton, where Smith resided and had charge of the postoffice; and if he did not ascertain where his residence was, he was guilty of the grossest laches; and they believe Smith saw Lutz in Doddridge county on December 23, 1868, when the common law process was served on said Lutz; and they also allege that Shoch, his agent, was in said county of Doddridge on December 28, 1868, and remained there several days; and that Lutz was in said county several times pending said common law suit; that Lutz's defense to the action, when judgment was rendered against him, was the same that complainant wants now to set up, and the judgment against Smith was not rendered for eight months afterwards. They assert that Smith then knew all that he now does, or could have ascertained the facts then; that he superintended the shipping on the Baltimore and Ohio railroad, of the lumber hauled by the McLains, and knew the whereabouts of both Lutz and

Shoch; they deny ever having had any settlement with Lutz, of the amount due them under the contract, though they had settlements before this contract was made, and took notes for the balance due, which had never been paid. The answer was sworn to.

The depositions in the cause prove that Lutz was a resident of Dauphin county, Pennsylvania, his postoffice being Derry Station; that he had a saw mill during the years 1867 and 1868, in Doddridge county, West Virginia; that he had working at his mill a number of laborers who lived in Dauphin county, Pennsylvania, some of whom remained in Doddridge county after Lutz left, and during the year, 1869; that Lutz left Doddridge county, having broken up, or being about to break up, about September 1868.; that while doing business there, one Shoch was his general agent and book-keeper; he, too, was a resident of Dauphin county, Pennsylvania; that Shoch remained in Doddridge county after Lutz left, about three months, attending to Lutz's business and acting as his agent; that after the contract was made with McLains, before stated, that on August 1, 1868, Shoch, the general agent of Lutz, had a settlement with the Messrs. McLain, and gave them a memorandum showing that there was then due them for hauling $590.45; and on September 1, 1868, they had another settlement with Shoch, general agent of Lutz, and took from him the memorandum, of which a copy is given above; that these balances were never paid by Shoch, and if paid at all, was paid by Lutz; that the hauling in September was paid by Shoch as stated in answer, amounts to $106.00. Lutz says he settled with U. D. McLain and gave his individual note for $45.00 or $75.00, but he does not say whether this was before or after the making of said contract, U. D. McLain having done work for him before the making of this contract. The books of Lutz, kept by Shoch, his agent, were left in a shanty near the mill, and were found by Wilson, another resident of Dauphin county, Pa., who about January 1872

took this mill in Doddridge county, and some time afterwards he told Smith of his having found them, and gave them to him in July 1873, after Smith's property was advertised for sale under the decree of the court. These books were produced, and were unsatisfactory in their character; one was a memorandum book purporting to give the number and size of the loads of lumber hauled by the McLains in June and July 1868. At the contract prices the hauling in these two months, noted on this book, would amount to about $400.00; the other was an account book intended to show the amount of hauling done in the month of August; this account book shows that the hauling done in September was paid for, amounting to $106.00, and in the month of October hauling is credited to the amount of about $42.00, only eight days of such hauling, up to October 13th, being entered, instead of nineteen days, charged by the Messrs. McLain. This would seem to show that all the books of Lutz, kept by Shoch, under the control and in the possession of Smith, were not produced, for in his bill he states that these books show that the McLains, during the month of October 1868, only had done $178.00 worth of hauling, instead of $287.86, which they claimed. Upon the point, whether Smith had used due diligence in obtaining the newly discovered evidence when the common law suit was pending, it was proven that during the time that the debt due the Messrs. McLain was being contracted, Smith was the agent of the Baltimore and Ohio railroad at Smithton, in Doddridge county, West Virginia, where he resided; that the lumber hauled by the McLains, for Lutz, was shipped at that point, and Smith had the opportunity of knowing what amount of lumber was hauled by them, and he had an interest in knowing, as he was bound to pay for it if Lutz did not, he being his security; that the workmen whom Lutz had with him, and who lived in Dauphin county, Pa., resorted to Smithton as their postoffice, through which they carried on their corres-

pondence; that some of them continued in Doddridge county after Lutz left, and during the year 1869; that they knew where Lutz lived and where his postoffice was; that they were frequently at the postoffice in Smithton, and that Smith was the deputy post master there. There is no proof that he ever inquired of any of them where Lutz or Shoch lived, or where their postoffice was, or that he ever wrote to either of them about the defense of the common law suit, though Smith gave his own deposition in the cause. On the contrary, Shoch proved that Smith well knew the residence and post-office of Lutz, and frequently they corresponded with each other, and no effort is shown by Smith to prepare for the defense of the common law suit, which was not tried, so far as it was against him, for a year after it was insti-tuted, nor did he then make any inquiry about Lutz's residence, until at least two years afterwards, when Wil-son thinks he inquired of him where he was and he could not not tell him. It was proved by Smith and Wilson that the books of Lutz, which Wilson found in 1872, were not given to Smith till after his property was advertised, under the decree in the chancery case, and Smith proved that he never heard of Wilson having them till then, and knew nothing of where these books were. It was also shown that the judgments in the com-mon law suit were obtained on McLains' evidence, and that the memorandums furnished him by Shoch, of the amount due for hauling, were not produced at the trial, though they had been shown to the counsel of McLain; and that at the first term of the court, Smith got the common law case continued as to him saying he wanted to take Lutz's deposition.

On November 16, 1874, the complainant Smith, filed a special replication to the answer of the Messrs. McLain in which he alleges among other things that the Messrs. McLain only hauled $42.50 worth of lumber in the month of October 1868, though in his bill sworn to, he had stated they hauled in October 1868, as shown by

Lutz's book, $178.00 worth of lumber.  He also in this special replication asserts that he sought diligently to find out Lutz's post office address in order to defend the common law suit, and he denies that he knew his whereabouts or that he (Smith) had the means of finding out.  This special replication however is not sworn to.  The court upon its being filed heard the two chancery suits together, and in the first cause set aside so much of the decree of May 17, 1873, as directs the payment by Smith to the McLains of the amount of their judgment against him at common law.  And reciting that it appeared to the satisfaction of the court in the second chancery suit that Smith had a substantial defense to make to said action of covenant of which he was ignorant at the trial of said action and could not avail himself thereof by the use of reasonable diligence, the court decreed that the judgments recovered by the McLains against Smith, be set aside and a new trial awarded Smith in said action of covenant which was ordered to be reinstated on the docket for trial and the motion to dissolve the injunction awarded to stay the sale of Smith's land was overruled.

From this decree U. D. McLain and Robert McLain obtained a *supersedeas* and appeal.

*C. C. Cole* and *W. L. Cole*, for appellants :

1st. An original bill cannot be sustained either by the parties or their privies to a former suit, for an injunction to restrain proceedings under a decree made in such suit.   Where an order is proper to stay proceedings under a decree made in a cause still pending in court, the party must apply to the court by petition for re-hearing : *Dyckman & McClain* v. *Kernochan &c.*, 2 Paige 26; *Banks* v. *Anderson & Co.*, 2 H. & M. 20 ; *Fanning* v. *Dunham*, 4 Johns. Ch. R. 35 ; *Radley & Co.* v. *Shave & Co.*, 1 Johns. Ch. R. 200; 2 Rob. Pr. (old), 318; *Roberts's adm'r* v. *Cocke*, 1 Rand. 121.

2. When a proper case is made in a court of equity to

entitle a party to relief against a judgment at law in the nature of a new trial, the court should not set the judgment aside, but should continue the injunction in force until a new trial can be had, and let the judgment stand as a security for whatever the plaintiff may recover upon the new trial: *Farmers' Bank* v. *Vanmeter*, 4 Rand. 553; 2 Rob. Pr. (old) 219; *Gordon* v. *Jeffrey*, 2 Leigh 410; *Rust et al.* v. *Ware*, 6 Gratt. 50.

3d. A special replication should not be filed to an answer in equity, unless the answer claims affirmative relief, in the nature of a cross-bill: Code W. Va., ch. 125 §35; *Vanbibber* v. *Beirne*, 6 W. Va. 168.

4th. A court of equity rarely interferes to grant new trials at law, on the ground of after-discovered evidence, and a bill seeking such relief is watched with extreme jealousy. To entitle the party to relief, he must show that he has done everything which could be reasonably required of him to obtain relief at law. He must allege in his bill, and, if denied, must strictly prove:

(*a*). That the evidence has been discovered since the former trial.

(*b*). That it is such that reasonable diligence could not have secured it at the former trial.

(*c*). That it is material in its object, and not merely cumulative, corroborative and collateral.

(*d*). That it is such that ought to produce, on another trial, an opposite result on the merits: 2 Rob. Pr. (old) 213, and authorities there cited; *Griffith* v. *Thompson*, 4 Gratt. 147; *Slack* v. *Wood*, 9 Gratt. 40, and authorities there cited; *Brown* v. *Speyers*, 20 Gratt. 296; *Reed's case*, 22 Gratt. 946; 2 Story Eq. Jur. §§887, 888; Hill. on New Trials, 452; *Floyd* v. *Jayne et al.*, 6 Johns. Ch. 472.

*C. Boggess*, for appellee:

1st. To impeach a judgment or decree it must be by an original bill in the nature of a bill of review, and not

a petition or cross-bill : Story Eq. Pl., §§426, 427, 631, 632.

2d. Where it appears that a new trial should be granted, the judgment will not be left to stand as a security : *Harry* v. *Leastel,* 4 W. Va. 115.

3d. The bill is not multifarious either, for misjoining parties.

4th. The special replication so called is in effect a general one, and the error in permitting it to be filed, was only a formal one, and not to the prejudice of the appellant.

5th. The bill is sufficient, and the evidence sustains it : *Harry* v. *Leastel,* 4 W. Va. 115.

GREEN, PRESIDENT, delivered the opinion of the Court :

The first question to be considered is: Ought the bill in the second chancery suit to have been dismissed, on the demurrer, as multifarious? Before considering this question, I will consider in what form Smith should have sought the relief prayed for in his bill. There are two distinct prayers in his bill, one is to set aside the common law judgment, because of the discovery of new evidence since its trial ; and the other to set aside the chancery decree, in favor of the McLains against him, for the amount of this judgment, and to enjoin the sale of his real estate to satisfy that judgment. The first relief could be had only by an original bill, and not by a petition for a re-hearing of the chancery cause, as contended by the appellee's counsel. An original bill is the only proper remedy to set aside a judgment obtained by fraud, accident or mistake, or to obtain relief from such judgment in the nature of a new trial of the case. Even when a final decree is obtained in that manner, the proper mode of obtaining relief is not by a bill of review, or other proceedings in the chancery cause, but by an original bill : *Estill & Eakle* v. *McClintic et al.,* and *Manion* v. *Fahy,* decided at the present term of this

Court; and also *Mussell* v. *Morgan*, 3 Bro. Ch. R. 79, and *Anderson* v. *Woodford*, &c., 8 Leigh 316. The mode of effecting the second relief asked in the bill of Smith, the setting aside or correcting the decree in the first chancery cause, was not by original bill, but by a petition for a re-hearing in that cause. The court in that cause, upon a petition for re-hearing being filed, setting out the pendency of a suit in chancery to set aside the common law judgment, asking relief in the nature of a new trial, should have staid the sale and proceedings in the chancery cause, till the other controversy was determined. Whenever an order is proper to stay proceedings in a chancery cause, the party must apply to the court upon petition in the chancery suit, and cannot file an original bill for that purpose: *Dyckman & McClain* v. *Kernochan*, 2 Paige 26; *Roberts adm'r* v. *Cocke*, 1 Rand. 121. The decree to be staid here being interlocutory, the proper mode of bringing it before the court for correction was by a petition for re-hearing. The bill of Smith ought therefore, for this reason, to have been dismissed as to all the defendants except the McLains, upon their demurrer, as no original bill for the matter set out in Smith's bill could be filed against them. The next question is: Should the bill have been dismissed also as to the Messrs. McLain, because of its seeking, not only to set aside the common law judgment properly, but also seeking to set aside or correct the chancery decree improperly, and for that purpose erroneously bringing before the court all the other defendants in the chancery cause?

The bill ought not, on this account, to have been dismissed as multifarious on demurrer. A bill is not multifarious, which sets up one sufficient ground for equitable relief upon its face, because it sets up another which contains no equity, which could entitle the plaintiff to the interposition of the court had the suit been brought for that alone: See *Varich* v. *Smith*, 5 Paige 160; *Mary* v. *Beckman Iron Co.*, 9 Paige 199; *Richards* v. *Pierce*, 52

Me. 562. The proper course for the defendants was to answer as to so much of the bill, as sought to set aside the common law judgment, and to have demurred to so much of it, as sought to correct the chancery decree and stay the sale of the lands under the chancery decree. Or if they answered as to both, they might on the hearing have asked to have the bill dismissed as to all of the defendants in the chancery cause, other than the Messrs. McClain, because of their improper joinder, and because the relief asked against them could not properly have been granted in an original suit against them for that purpose alone.

The allegations in reference to setting aside the chancery decree or staying proceedings under it, were simply impertinent, and afforded grounds of demurrer to that part of the bill, but did not give good ground of demurrer to the whole bill as multifarious. There was however another ground, on which the demurrer to the entire bill ought to have been sustained. In a bill brought to obtain relief in the nature of a new trial, the bill should allege, not only the discovery of new evidence, but also what that evidence is, that the court may see that it is material in its object and not merely cumulative, corroborative or collateral; and also that it is such that it ought to produce an opposite result on the merits. And the bill must do more than this: it must show that the evidence is such that reasonable diligence on the part of the defendant could not have secured it at the former trial: See *Griffith* v. *Thompson,* 4 Gratt. 147; *Slack* v. *Wood,* 9 Gratt. 40; *Brown* v. *Speyers,* 20 Gratt. 296; *Floyd* v. *Jayne,* 6 Johns. Ch. 479; *Hendrickson* v. *Hinckley,* 17 How. 445; *Faulkner's ad'mr* v. *Harwood,* 6 Leigh 127; *Meem* v. *Rucker,* 10 Gratt. 506; *Walton & Co.* v. *Hamilton,* 9 Gratt. 255; *George* v. *Strange,* 10 Gratt. 499. Nor can a security rely on his ignorance of a substantial defense, arising out of transactions between the plaintiff in the common law suit and the principal, as a reason for opening a

judgment against the security, unless he alleges in his bill and shows by the evidence, that he took proper means to ascertain the true state of the case, and prepare for his defense in the common law action, or that he was prevented by circumstances, that rendered it impossible for him to take these measures. *McGrew* v. *Tombechbee Bank*, 5 Porter 547; Also, *Lee* v. *Insurance Bank* 2 Ala. 21; *Powers* v. *Butler* 3 Green. Ch. 465; *Meem* v. *Rucker*, 10 Gratt. 506; *Floyd* v. *Jayne*, 6 Johns. Ch. 479; *Slack* v. *Wood*, 9 Gratt. 40; *Bierne* v. *Mann*, 5 Leigh 364.

It is true, that in the case of *Harvey* v. *Seashol*, 4 W. Va. 115, the bill did not allege any diligence with reference to the obtaining of the receipt, which was alleged to have been discovered since the trial, but there were allegations in the bill which the court thought excused the plaintiff from the use of diligence in procuring the receipt before the trial. The judgment was rendered against a security of a sheriff for the amount of certain receipts given to a clerk for bills, while the security was absent in Ohio, whither he alleged in his bill he had fled because of threats made by rebels to kill him and his wife, he being an out-spoken Union man. He also alleged that he was afraid to attend the court because of these threats, and under these circumstances, judgment had been given against him during the war, and in his absence; and that after his return, in the fall of 1865, he learned for the first time that a receipt in full for these claims was in the hands of a party, with whom the sheriff had left his papers; the sheriff having also left the State. The majority of the court thought, these facts excused the allegation in the bill or proof in the case of diligence before the trial at law to procure this receipt. But Judge Berkshire dissented, being of opinion that in every case due diligence to discover the new evidence must be alleged and proven. If the allegation or proof, that reasonable diligence has been used to procure the newly discovered

evidence could, in such case, or in any case, be excused, it could not in the case before us, as there are no allegations in the bill, which could be regarded as setting up any facts tending to excuse the use of such diligence; and there is no allegation that any sort of diligence to procure or discover the new testimony is either alleged or even hinted at in the bill. The bill should therefore have been dismissed on the demurrer; but it not having been done, this Court might perhaps send the case back with leave to amend the bill, if the evidence showed that the plaintiff, Smith, had really used due diligence in the preparation of his defense in the common law case: and had an improper verdict rendered against him because of his inability to procure the newly discovered testimony, though he had used all reasonable diligence to do so before the case was tried; and further saw that the newly discovered evidence was such as ought to have produced a different result. But the evidence shows no such case; on the contrary, it establishes clearly that Smith used no sort of diligence in preparing for the trial of the common law case. The allegations of the bill are vague and indefinite, even as to what the newly discovered evidence is; they were books of his co-defendant, Lutz; but what books they were, or what appeared from them, is not distinctly stated in the bill. From the proof we may infer, that what was claimed as newly discovered evidence, was two books of Lutz's, kept by his agent, Shoch, and also the testimony of Lutz and Shoch. But the evidence which has been set out in the statement of the case, shows clearly that Smith well knew where these witnesses lived, and could have procured their depositions at the trial of the cause, as he has done in the chancery suit, had he used any sort of diligence; and that through them he could have learned where the books were. He had every reason to believe that some account had been kept by them of the work done by the McLains, for it was a matter of course for such account to be kept; and his failure to make any inquiry of these

parties, on the subject, shows the greatest laches. In his deposition Smith does not pretend to allege, that he made any effort to get the evidence of these witnesses or these books, when the common law case was tried. He had ample time to do so, and is without any excuse for failing so to do. It is very questionable, too, whether there would be any material change in the amount found due, were a new trial awarded. It is obvious that all the books kept by Lutz, in the possession of Smith, have not been produced, as he states in his bill matters which appear upon the books under his control, which do not appear in the books afterwards produced and filed. The defects in the bill are attempted to be supplied in the special replication, in which he alleges the use of reasonable diligence, and his ignorance of where Lutz lived. But this special replication is not sworn to, as the bill and answer were, and ought not to have been permitted to be filed. Smith, in his deposition, does not pretend to make the allegations, which he makes in this special replication. It was not a proper case to permit the filing of a special replication, as no new matter was set up in the answer as ground for affirmative relief, such as would have formerly been set out in a cross-bill. Had this been the character, such special replication would have been proper: Code W. Va., ch. 125 §35; *Vanbibber* v. *Beirne,* 6 W. Va. 168.

Had the bill contained all the requisite allegations, and they been sustained by the proof, still the decree rendered by the court would have been erroneous; it should in such case have allowed the judgment to stand as a security for the amount, which it might turn out was actually due to the plaintiffs in the common law action; and the matters in controversy consisting of accounts between the parties, which it was proper for a commissioner in chancery to have settled, the cause should have been referred to a commissioner for such settlement; and a new trial of the case at common law ought not to have been awarded: See *Rust et al.* v. *Ware,* 6 Gratt. 50; also

*Gordon* v. *Jeffery,* 2 Leigh 410 ; *Farmers' Bank* v. *Van Meter,* 4 Rand. 553.

I am therefore of opinion, that the decree of the circuit court of November 16, 1874, rendered in the cause of U. D. McLain and Robert McLain *v.* F. M. F. Smith *et al.* and F. M. F. Smith *v.* U. D. McLain, Robert McLain *et al.* should be set aside and annulled, and the appellants must recover of the appellee, F. M. F. Smith, their costs about this appeal in this Court expended ; and this Court proceeding to render such judgment, as the circuit court of Doddridge county should have done, doth adjudge, order and decree, that the injunction awarded the said F. M. F. Smith by C. S. Lewis, Judge of the second circuit, on the 11th day of August 1873, be and the same is hereby dissolved, and the bill of the said Smith in the second named of said causes be and the same is hereby dismissed ; and that the defendants in said cause, do recover of the said Smith their costs about said suit expended in the circuit court of Doddridge county.

Judges HAYMOND and MOORE concurred in this opinion.